STATE of Wisconsin, Plaintiff-Respondent,

v.

Joseph F. JILES, Defendant-Appellant-Petitioner.

Supreme Court

*No. 02–0153–CR. Oral argument April 29, 2003.—Decided June 27, 2003.*

2003 WI 66

(Also reported in 663 N.W.2d 798.)

458

For the defendant-appellant-petitioner there were briefs by *Mark S. Rosen* and *Rosen and Holzman, Ltd.,* Waukesha, and oral argument by *Mark S. Rosen.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1.   DAVID T. PROSSER, J.   This is a review of an unpublished decision of the court of appeals[1] that affirmed both the defendant's conviction following a guilty plea to one count of first-degree reckless injury by

---

[1] *State v. Jiles,* No. 02–0153–CR, unpublished slip op. (Wis. Ct. App. Oct. 22, 2002).

use of a dangerous weapon, and one count of armed robbery, both as party to a crime, and the circuit court's order denying the defendant's motion for postconviction relief.

¶ 2. On May 15, 2000, Joseph F. Jiles (Jiles) was arrested at 11:30 p.m. shortly after an armed robbery and shooting at a Milwaukee gas station. He was taken into police custody and transported to the Milwaukee Police Department. At 4:03 a.m. Jiles was awakened by a Milwaukee police detective and questioned about the robbery. Over the next 80 minutes he allegedly made a number of incriminating admissions about his involvement in the robbery, which the detective reduced to writing in a report that Jiles signed.

¶ 3. In due course, Jiles moved to suppress his statements. He claimed that: (1) he was not informed of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436 (1966), prior to being interrogated; (2) he was unable to make a voluntary statement to police because he was intoxicated due to marijuana use prior to his arrest; and (3) any statements he made were not voluntary because they were the result of overbearing conduct by the interrogating officer.

¶ 4. The issue presented is whether Jiles received a full and fair evidentiary hearing on this motion to suppress his statements.

¶ 5. We conclude in this fact-specific matter that Jiles did not receive a full and fair hearing because the State did not meet its burden of proof. We are disturbed by the disregard of established procedure that we see in the record. We reverse the decision of the court of appeals, vacate Jiles' judgment of conviction, and allow Jiles to withdraw his guilty plea. We remand this

matter to the circuit court for a new *Miranda-Goodchild* hearing if Jiles renews his motion to suppress his statement.

## FACTS

¶ 6.   This case is about the proper administration of justice. We do not focus on the crime, which was a violent robbery; or on the defendant; or on the innocent victim who was badly injured and blinded in one eye when she was shot in the head. We focus solely on the proceedings, especially the *Miranda-Goodchild* hearing, because proceedings of this nature may impact thousands of criminal cases.

¶ 7.   Joseph Jiles was taken into custody on May 15, 2000. He waived his preliminary examination, and a jury trial was calendared for September 12, 2000. At a hearing on September 5, the trial date was vacated when Jiles' defense counsel, Daryl A. Kastenson, raised questions about the defendant's competency. Milwaukee County Circuit Judge Robert Crawford suspended the proceedings and ordered a competency examination. At this hearing, Kastenson and Assistant District Attorney Michael Mahoney also signed a "Felony Pretrial Scheduling Order" setting an October 9 final motion date, an October 20 final pretrial date, and an October 24 jury trial date. The order contained a handwritten note: "(1) Any Miranda Goodchild motions to be filed so motion can be heard on 10/9/00–1:30 P.M."

¶ 8.   On September 20, Kastenson signed the Jiles motion to suppress evidence. It was filed with the court on September 22.

¶ 9.   On October 12, the court convened a hearing to receive and consider a psychiatrist's report about Jiles' competency. Present in court with Judge Craw-

ford were Assistant District Attorney Douglas Simpson, defense counsel Kastenson, and defendant Jiles. The psychiatrist had concluded in his report that Jiles was malingering. The defense did not challenge the psychiatrist's conclusion, and the court determined that Jiles was competent. Then the following exchange took place:

MR. KASTENSON: Yes, Your Honor. Currently this matter is set for a final pretrial next Friday at 8:30 and jury trial on the 24th of October at 8:30.

I have filed some motions in this case as well, and I don't know if the Court wishes to take them up today or next Friday. One dealing with severance of the trials of this defendant and the codefendant, Lyron Wilson. That motion I would like to withdraw at this time because it's my understanding that Mr. Wilson entered a guilty plea before this Court this past Tuesday and will not be having a jury trial.

THE COURT: Mr. Wilson did plead guilty. I am prepared to address your motion to suppress the statements. Do you have the police reports, Mr. Simpson?

MR. SIMPSON: Regarding which part of the—I thought I attached them to mine. I did not, Judge?

THE COURT: I don't have a response from you, Mr. Simpson.

MR. SIMPSON: I filed one.

MR. KASTENSON: I received a response from Mr. Simpson, but it was the response to Mr. Wilson's motion to suppress the statement rather than specifically a response to my client's motion to suppress the statement.

464

MR. SIMPSON: Then I don't know if I ever received a motion from Mr. Jiles because I would have answered it.

MR. KASTENSON: I filed with the Court the original, of course, with the clerk's stamp and the district attorney's stamp dated September 22nd. I'm also showing Mr. Simpson a photocopy of a letter with the motions attached that I sent to him on September 22nd.

MR. SIMPSON: I do not recall receiving this. I note that attached to the defendant's motion are the reports. So if the Court has that, at least it gets the Court that far. If you'd like another copy, I can provide one. I don't have this motion nor have I responded to it.

THE COURT: The motion which Mr. Jiles filed on September 22nd, 2000 bears the district attorney's Bate stamp reflecting service on the District Attorney's Office. It is helpful for future reference, Mr. Kastenson, to file the motions here in Branch 9. The District Attorney's Office systems are inadequate, and documents that are actually filed in the District Attorney's Office seem to have a way of getting lost.

MR. KASTENSON: That's why I mailed a copy to Mr. Simpson, but apparently that was lost in his office as well but—

MR. SIMPSON: I certainly believe 'cause I've had many, many cases with Mr. Kastenson that he did exactly what he says. And I, quite frankly, don't expect the Court to offer the State any leeway should it feel that my failure to respond deserves something in terms of oral chastisement. But I can only assure the Court that I answer these things whenever I see them. If I missed this one and I should have had it, I apologize. But I tried to answer it.

465

¶ 10. This exchange reveals that the court had not scheduled a hearing for October 12 on the suppression motion. The assistant district attorney had lost the motion, was surprised by the hearing, and unprepared to present evidence. The court expected the assistant district attorney to produce a police report, and so the prosecutor scrambled to point out that relevant police reports were attached to the defendant's withdrawn, unrelated motion to sever his case from his co-defendant.

¶ 11. Undeterred by the State's lack of preparedness, Judge Crawford plunged forward. He addressed the public defender: ·

> THE COURT: Do I understand that you raise two challenges? First, you challenge whether the police, in fact, informed Mr. Jiles of his Miranda rights. And your second challenge is that, due to his voluntary intoxication, based upon his marijuana use, that any statements that he did make to police were not knowing and voluntary?

¶ 12. After receiving an affirmative answer, the court launched into a lengthy discussion of the State's burden at a suppression hearing as well as the role of the court:

> THE COURT: Under *State against Armstrong,* the district attorney bears the burden of proof on both these issues. The district attorney must prove by a preponderance of the evidence that, in fact, a defendant who was subjected to custodial interrogation was given his Miranda warnings and that the defendant made a knowing and voluntary waiver of those warnings.
>
> The question of whether a statement was taken involuntarily in violation of the due process clause requires the district attorney to prove beyond a reason-

able doubt that the statement was voluntary. Statements can be involuntary if a defendant's use of narcotic drugs or alcohol so impairs a person's ability that their statements cannot be said to be the product of a free and voluntary choice.

So during the evidentiary hearing, I'll be focusing on a couple of things. I'll be focusing on whether the defendant was in custody, whether he was given Miranda warnings, whether he made a knowing and voluntary waiver of those warnings and whether he was then subjected to interrogation.

I'll also be focusing on the due process question, on any behavior which indicates that the defendant was fully possessed of his faculties. That means any behavior that shows that the defendant was asserting his will and making choices will be relevant to me in my decision on whether his consumption of marijuana or any other drug would have overcome his ability to make free and informed choices.

The State's burden of proof on the Miranda issue and the due process issue has two components. One is the burden of production; the other is the burden of persuasion. The judge is not bound by the rules of evidence when considering whether a defendant made a knowing and voluntary waiver of his Miranda rights and whether his statement was voluntary under the due process clause.

So I'll start with the police reports which are attached to the defendant's motion to sever. The reports recite the circumstances of Mr. Jiles' interrogation. Page one of the police reports reflects that Mr. Jiles was arrested on May 15, 2000 at 11:34 p.m. Page two of the police reports reflects that the next day on May 16, 2000 at 3 a.m., Mr. Jiles was interrogated by Detective Billy Ball. Page two recites that Detective Billy Ball advised—

467

¶ 13. At this point, the defense counsel intervened:

MR. KASTENSON: Excuse me, Your Honor. I think—Actually I think that is Mr. Wilson's statement. The codefendant's statement was attached to my batch of motions because it pertained to my motion to sever the cases for trial. In the filing that I made, I believe it's the last three pages of that filing that is Mr. Jiles' statement.

¶ 14. After acknowledging that he had been reading from the wrong police report, the court went on:

THE COURT: Thank you for that correction. I hadn't noticed that I was looking at the statement made by the codefendant Wilson. I have turned now to the three-page statement of Mr. Joseph Jiles. It reflects that he was arrested on May 15, 2000 at 11:30 p.m. Near the bottom of page one there's a place for the police to write any additional comments. They wrote, quote, Jiles denies being high on drugs or drunk on alcohol. Jiles admits to being counseled at mental health and was prescribed Ritalin which he—

MR. SIMPSON: When he.

THE COURT: —when he was nine, closed quote. On page two of the police statement dealing with the interrogation of Joseph Jiles. The report recites that on May 16th, at 4:03 a.m., Mr. Jiles was questioned. That would be approximately four-and-a-half hours after he was arrested. The report recites that Detective Ronald Burch advised Joseph Jiles of his Miranda rights. The report recites that Joseph Jiles stated he understood all of his rights, and the report recites that Joseph Jiles waived his rights and made the following statements.

Following this recitation of information, there was a X placed on the report; and apparently Joseph Jiles

signed his name. Then the report goes on to recite the circumstances of Joseph Jiles' involvement. On page three of three, the report has a place where Joseph Jiles was free to sign his name, and he did sign his name. The report reflects that the interrogation concluded on May 16, 2000 at 5:25 a.m. That means that the interrogation lasted approximately one hour and 22 minutes, starting at 4:03 a.m. and concluding at 5:25 a.m.

This information which I've recited from page one, page two and page three of Joseph Jiles' police report dealing with the interrogation by police of Joseph Jiles meets the State's burden of production on the question of whether Mr. Jiles received Miranda warnings and waived those warnings knowingly and voluntarily prior to being interrogated. The report also meets the State's burden of production and demonstrated that the statements that were made were knowing and voluntary.

I reach these preliminary conclusions based on the information on page one where the defendant himself denies being high on drugs or drunk on alcohol, and there's certainly nothing inconsistent which the officers noted. I also base these preliminary findings on the statement at the top of page two which recite in very plain language that Mr. Jiles was given his Miranda rights and he waived those rights.

So, Mr. Kastenson, I'll turn to you for any evidence you have to offer which I might consider in opposition to the information I've recited when I make my ultimate conclusion on whether the State's carried its burden of proof on the two issues that Mr. Jiles raises. Do you have any evidence that you want to present either by way of documents or testimony?

MR. KASTENSON: Yes. I call Mr. Jiles to testify.

¶ 15.   At this point in the proceedings, the State's only contribution had been to point out a document attached to an unrelated motion offered by the defendant and to correct the court when the court misread a word in the police report. The assistant district attorney even failed to advise the court that it was reading from the wrong police report.

¶ 16.   After Jiles had testified, claiming that he did not know what *Miranda* warnings were and that he was still under the influence of marijuana when he was questioned, the prosecutor asked the court to take notice of the psychiatrist's report prepared for the competency hearing and its conclusions regarding Jiles' malingering and general lack of credibility.

¶ 17.   Jiles' counsel objected to the report as improper opinion evidence from an examiner as to another's credibility. The court responded that it would consider this report's conclusions because the rules of evidence did not apply to the hearing and because the report constituted an informed forensic opinion of Jiles' basic psychology.

¶ 18.   Then the court asked the prosecution if it wished to argue whether the State had demonstrated a proper *Miranda* waiver by a preponderance of the evidence and the voluntariness of Jiles' statements beyond a reasonable doubt. The prosecutor responded that further argument was not necessary, given what had already been heard. Jiles' defense counsel then made several arguments as to why, based on the record before the court at this hearing, the State had not met its burden of proof.

¶ 19.   The circuit court thereafter made numerous findings, including that the police report fairly recited that Jiles was advised of his *Miranda* rights and that he knowingly and voluntarily waived them. The court also

found that Jiles twice signed the report. One signature appeared immediately after some writing indicating that the police informed Jiles of his *Miranda* rights and that Jiles waived them. The other signature followed the recitation of Jiles' statements. The court also found that Jiles was not credible in his testimony. It then concluded, as matters of law, that *Miranda* warnings were given and that Jiles knowingly and voluntarily waived them. The court also concluded that Jiles' statement was proven beyond a reasonable doubt to be voluntary because Jiles' "ability to make informed choices was not overborne by any marijuana which he may have consumed prior to his arrest." On these grounds, the court denied Jiles' motion to suppress his confession.

¶ 20. Eight days after the motion hearing, Jiles pled guilty to one count of first-degree reckless injury with the use of a dangerous weapon,[2] and one count of armed robbery with the use of force, both as a party to a crime. Jiles was later sentenced to 20 years on the first count and 40 years, to be served consecutively, on the second count, with 35 years of his sentence to be spent in prison and the remainder slated for extended supervision.

¶ 21. Jiles filed a postconviction motion under Wis. Stat. § (Rule) 809.30[3] requesting a *Machner*[4] hearing to address the alleged ineffectiveness of his trial counsel. Jiles based his postconviction claim on his trial

---

[2] Jiles had originally been charged with attempted first-degree homicide, also while armed and party to a crime.

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[4] *State v. Machner,* 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

counsel's failure to object to: (1) the circuit court's reliance on a police report instead of live testimony at the *Miranda-Goodchild* hearing; (2) the court's reliance on a police report that was not properly authenticated; and (3) the court's reliance on improper sentencing information. The circuit court denied the postconviction motion without holding a hearing.

¶ 22.   In his written order denying relief, Judge Crawford declared:

> [THE COURT:] A judge may rule upon motions to suppress without taking testimony if police reports, other documents, photographs, or physical objects provide an adequate factual basis for resolving the constitutional questions of fact. A judge is not required to consider testimony from the interrogating officer.
>
> A lawyer should not be surprised if a motion to suppress statements is decided on police reports or other supporting papers. The Wisconsin Rules of Evidence exempt from their coverage hearings on "[p]reliminary questions concerning . . . the admissibility of evidence . . . ." Wis. Stat. § 901.04(1). This exemption is "restate[d], for convenience," in Wis. Stat. § 911.01(4)(a):
>
> . . . .
>
> The judge decides, when ruling upon a motion to suppress evidence, whether the defendant's statement or other physical evidence was come in by violation of a constitutional right or *Miranda*. If it was, then the evidence is suppressed and will not be received at trial for the jury's consideration at trial. The judge's decision on the admissibility of this evidence, with minor exceptions set out in Wis. Stat. § 901.04(1), is not bound by the rules of evidence.
>
> The judge, when ruling upon a motion to suppress, may rely upon (1) police reports, (2) oral testimony that

would ordinarily be excluded as hearsay under Wis. Stat. § 908.01, and (3) "records, affidavits or other papers," Wis. Stat. §§ 802.01(2)(b) (supporting papers for motions), 972.11(1) (applying civil rules generally to criminal practice). Thus, a prosecutor may provide the judge with records, affidavits, or other papers that set out facts necessary for resolution of constitutional questions. Even if the parties present testimony, time may be saved by the introduction of records, affidavits, and police reports.

## ANALYSIS

¶ 23. Wisconsin Stat. § 971.31(2) requires a defendant to raise many defenses and objections by motion before trial or they will be deemed waived. In this case, the defendant moved to suppress his statement before trial, Wis. Stat. § 971.31(3), and he maintained his objection to the admissibility of the statement throughout the suppression hearing.

¶ 24. The defendant thereafter entered a guilty plea. An order denying a motion challenging the admissibility of a statement of a defendant may be reviewed upon appeal from a judgment of conviction, "notwithstanding the fact that such judgment was entered upon a plea of guilty." Wis. Stat. § 971.31(10). Because the present case involves a direct appeal from a judgment of conviction as well as an appeal from a denial of postconviction relief, the defendant is entitled to challenge the court's order on the admissibility of his statement.[5]

---

[5] The parties focused their arguments on whether Jiles' trial counsel was ineffective for not properly objecting to particular actions taken by the circuit court at his *Miranda-Goodchild* hearing, with the State highlighting the questionable viability of this claim under the posture and facts of this

473

¶ 25. Courts conduct pretrial hearings on such preliminary questions as the admissibility of evidence under Wis. Stat. § 901.04. The admissibility of evidence includes the admissibility of confessions. Wis. Stat. § 901.04(3); *see also* Wis. Stat. § 971.31(3). The hearings considering the admissibility of confessions are known as *Miranda-Goodchild* hearings after *Miranda v. Arizona,* 384 U.S. 436 (1966), and *State ex rel. Goodchild v. Burke,* 27 Wis. 2d 244, 133 N.W.2d 753 (1965). As a rule, the hearings are designed to examine (1) whether an accused in custody received *Miranda* warnings, understood them, and thereafter waived the right to remain silent and the right to the presence of an attorney; and (2) whether the admissions to police were the voluntary product of rational intellect and free, unconstrained will. *State v. Schlise,* 86 Wis. 2d 26, 44, 271 N.W.2d 619 (1978). The hearings on these separate but overlapping issues may be held at the same time. *Roney v. State,* 44 Wis. 2d 522, 523, 171 N.W.2d 400 (1969).

¶ 26. Jiles raised both *Miranda* and voluntariness issues in his motion to suppress. His motion imposed an evidentiary burden on the State. At a suppression hearing, the State is required to show that the defendant received and understood his *Miranda* warnings, *State v. Armstrong,* 223 Wis. 2d 331, 345, 588 N.W.2d 606 (1999); *State v. Mitchell,* 167 Wis. 2d 672, 697, 482 N.W.2d 364 (1992), and that he knowingly and intelligently waived the rights protected by the *Miranda*

---

case. We, however, analyze the sufficiency of Jiles' *Miranda-Goodchild* hearing through the lens of his direct appeal from his judgment of conviction.

warnings. *Armstrong,* 223 Wis. 2d at 346; *State v. Santiago,* 206 Wis. 2d 3, 12, 556 N.W.2d 687 (1996). "The State also bears the burden on the issue of whether the warnings were sufficient in substance." *Armstrong,* 223 Wis. 2d at 346; *Santiago,* 206 Wis. 2d at 12. Finally, the State has the burden of showing that the defendant's statements were voluntary. *Armstrong,* 223 Wis. 2d at 347; *Mitchell,* 167 Wis. 2d at 696; *Goodchild,* 27 Wis. 2d at 264. The State's burden throughout the proceedings is preponderance of the evidence. *State v. Agnello,* 226 Wis. 2d 164, 181–82, 593 N.W.2d 427 (1999).

¶ 27. The importance of *Miranda-Goodchild* hearings was foreshadowed in *Jackson v. Denno,* 378 U.S. 368 (1964), where the United States Supreme Court explained that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession. *Jackson,* 378 U.S. at 376. The Court suggested two optional procedures for determining the voluntariness of a confession, one of which this court adopted in *Goodchild,* 27 Wis. 2d at 264–65. The *Jackson* court stressed that a defendant objecting to the admission of a confession "is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Jackson,* 378 U.S. at 380. Only a reliable determination on the voluntariness issue satisfies the constitutional rights of the defendant. *Id.* at 387. Where pure factual considerations are important, a full and reliable determination of voluntariness is required. *Id.* at 392 (citing *Townsend v. Sain,* 372 U.S. 293 (1963)).

¶ 28. The defendant argues that he did not receive a full and fair hearing on the motion to suppress his statement. We agree.

¶ 29. The defendant cannot prevail on an argument that the court *must* apply the rules of evidence at a suppression hearing. Wisconsin Stat. § 901.04(1) provides that, in making a determination on the admissibility of evidence, "the judge is bound by the rules of evidence only with respect to privileges and as provided in s. 901.05." This rule is reinforced by Wis. Stat. § 911.01(4)(a), which states that, for the most part, the rules of evidence are inapplicable to the determination of preliminary questions of fact under § 901.04(1).

¶ 30. These rules enjoy support from the Supreme Court's analysis in *United States v. Matlock,* 415 U.S. 164, 172–73 (1974), a case coming out of Wisconsin. The Court stated that "the rules of evidence normally applicable in criminal trials do not operate with full force at hearings before the judge to determine the admissibility of evidence." *Id.* at 172–74 (discussing *Brinegar v. United States,* 338 U.S. 160 (1949); Fed. R. Evid. 104(a) & 1101(d)(1), and citing 5 J. Wigmore, *Evidence* § 1385 (3d ed. 1940); C. McCormick, *Evidence* § 53 n.91 (2d ed. 1972)); *see also United States v. Raddatz,* 447 U.S. 667, 679 (1980) ("At a suppression hearing, the court may rely on hearsay and other evidence, even though the evidence would not be admissible at trial.").

¶ 31. The defendant also loses on a contention that a *Miranda-Goodchild* hearing without the State presenting live testimony from law enforcement officers will *never* constitute a full and fair hearing and will always amount to a denial of due process. *See Matlock,* 415 U.S. at 174–75 (citing *McCray v. Illinois,* 386 U.S.

300, 313 (1967)); *State v. Frambs,* 157 Wis. 2d 700, 704, 460 N.W.2d 811 (Ct. App. 1990) ("We see no evidence that the Supreme Court intended the protection of the confrontation clause to be available to a defendant in those pretrial situations enumerated in sec. 901.04(1), Stats.").

¶ 32.   These conclusions do not diminish the importance of *Miranda-Goodchild* hearings in our system of criminal justice. These constitutionally required hearings are designed to protect a defendant's right against self-incrimination by assuring that *Miranda* warnings are given by the police and understood by the defendant and that any statements made by a defendant in custody are voluntary in fact. *Miranda-Goodchild* hearings promote a complex of values, including the reliability of incriminating statements, the professionalism and integrity of law enforcement, and the fairness of the criminal justice system. The Fourteenth Amendment forbids the use of involuntary confessions, in part, because of the "deep-rooted feeling that the police must obey the law while enforcing the law." *Jackson,* 378 U.S. at 385–86 (quoting *Spano v. New York,* 360 U.S. 315, 320 (1959)).

¶ 33.   Here, our concern is not with the police. Our concern is with the people in the court system who were charged with protecting the defendant from potential abuse.

¶ 34.   Wisconsin Stat. § 901.02 provides guidance to courts. The rules of evidence "shall be construed to secure fairness in administration . . . and promotion of growth and development of the law of evidence *to the end that the truth may be ascertained and proceedings justly determined." Id.* (emphasis added).

477

¶ 35. We think it will be a rare case that the State is able to meet its burden of proof at a *Miranda-Goodchild* hearing by relying exclusively on an unsworn police report.

¶ 36. In this case, the State did not meet its burden of proof.

¶ 37. Wisconsin Stat. § 971.31(3) provides that "[t]he admissibility of any statement of the defendant shall be determined . . . by the court in an evidentiary hearing out of the presence of the jury . . . ." As the circuit court acknowledged, the State has the burden of production and the burden of proof. In this case, the State was obviously not prepared for the hearing. It offered no evidence at the "evidentiary hearing." Whether the State was denied an opportunity to present evidence or whether it gave up its opportunity to present evidence, the result is the same: the State failed to meet its burden of production and thus did not satisfy its burden of proof.

¶ 38. When the State showed surprise that Jiles had filed a suppression motion, the circuit judge intervened and assumed the State's burden of establishing the existence of proper *Miranda* warnings and voluntariness. The court took over, sua sponte, and dominated the hearing to such an extent that the State could barely get a word in, much less present evidence.

¶ 39. The *Miranda-Goodchild* hearing is an evidentiary hearing for the parties. It is not a soliloquy for the court. The court must not permit itself to become a witness or an advocate for one party. A defendant does not receive a full and fair evidentiary hearing when the role of the prosecutor is played by the judge and the

assistant district attorney is reduced to a bystander. We hold that the procedure employed by the court in this hearing did not conform with the minimum requirements of § 971.31(3) for an "evidentiary hearing" and "did not afford a reliable determination of the voluntariness of the confession [to be] offered in evidence at trial." *Jackson,* 378 U.S. at 377.

¶ 40.  The record shows that the police report was never formally moved or received into evidence. But even if the report had been received, the court mocked the seriousness of the hearing because the only "evidence" before it was an unsworn police report attached to an unrelated motion filed by the defendant. All the court did with the evidence was to read it aloud. The inherent unreliability of this procedure is demonstrated by the fact that the court began by reading the wrong report. Certainly, the procedure the court used did not permit any examination of Detective Burch regarding when the *Miranda* warnings were given (assuming that they were given), whether they were sufficient in substance, and when the defendant signed his name.

¶ 41.  In his motion, the defendant also alleged that he was high on marijuana at the time of his interrogation. The court dismissed this claim by noting that the police report stated: "JILES DENIES BEING HIGH ON DRUGS OR DRUNK ON ALCOHOL." But the procedure employed at the hearing did not permit defense counsel to ask the detective whether the detective or the defendant initiated the discussion about being high on drugs. If it was the detective, was that a standard inquiry, or did Detective Burch notice something or smell something about the defendant? If the inquiry was a standard inquiry, why was a similar inquiry not noted on the co-defendant's report?

¶ 42.  Significantly, in its order denying the post-conviction motion, the circuit court drew on testimony from the completely separate sentencing hearing of the co-defendant to explain that:

> Seventeen-year-old Joseph F. Jiles and his nineteen-year-old co-defendant shot an elderly woman in the head during a robbery. The two searched desperately for a victim after their marijuana dealer demanded $2,000 in payment for one pound of marijuana that he had fronted the pair. *Mr. Jiles smoked his marijuana rather than selling it.*

(Emphasis added.)  The court's own explanations of events lend plausibility to the defendant's claim that he was high on marijuana.

¶ 43.  Although the errors that demand our reversal of Jiles' conviction fall squarely on the shoulders of the circuit court, the other participants in this hearing each share some degree of responsibility.

■

¶ 44.  The prosecutor erred by acquiescing to the circuit court's improper occupation of the State's role at the suppression hearing, especially given the State's acknowledged lack of preparedness. Moreover, when the circuit court finished reading from the police report and concluded that the report met the State's burden of production, the prosecutor should have respectfully requested that the court permit the State to make its own case regarding suppression or to allow the State to supplement what the court had done by its own initiative. The prosecutor remained a bystander before, during, and after the court found that the police report met the State's burden of production. It was not until Jiles' cross-examination that the prosecutor resurfaced in this hearing.

¶ 45. Although the prosecution did eventually elicit information during its cross-examination of Jiles that supported its position, and it did reference the psychiatric report to question Jiles' credibility, the prosecution did not offer either the report or Jiles' testimony as evidence to meet its *initial* burden of production.

¶ 46. Jiles' trial counsel also could have attempted to remedy the court's error. Counsel could have refrained from presenting any evidence regarding the admissibility of Jiles' statements and forced the State to meet its burden of proof on the evidence proffered by the court alone. *Goodchild* permits, but does not require, a defendant to testify for the limited purpose of explaining the circumstances under which a confession was obtained. *Goodchild,* 27 Wis. 2d at 265. When the court asked Jiles' counsel if he had any documentary or testimonial evidence to present, he could have answered that there was no need to submit evidence because the State had failed to meet its burden of proof based on the existing record. While we agree that Jiles' counsel likely saw the proverbial handwriting on the wall after the court found the police report to have met the State's burden of production, declining to go on would have deprived the State of any favorable evidence resulting from Jiles' testimony.

¶ 47. In addition, Jiles' counsel arguably erred in failing to object to the practice the court was engaging in and failing to insist that the State be required to make its own case regarding the admissibility of Jiles' custodial statement. We acknowledge, however, that Jiles' trial counsel *did* sufficiently object at the hearing to the State's ultimate failure to meet its burden of proving that a *Miranda* warning was given to Jiles, that

Jiles knowingly and voluntarily waived his rights, and that Jiles' statements were voluntary.

¶ 48. The manner in which Jiles' suppression motion was handled effectively caused the burden of proving an admissible confession to shift from the State to the defendant. While the rules of evidence do not apply at suppression hearings, the State continues to bear the burden of proof at these hearings. Therefore, each court conducting a suppression hearing must maintain the proper role for each participant in order for a full and fair evidentiary hearing to occur.

¶ 49. In conclusion, we reverse Jiles' judgment of conviction. Based on the circuit court's failure to provide a full and fair evidentiary hearing on Jiles' motion to suppress his statements to the police and on the State's concomitant failure to meet its burden of proof, Jiles' *Miranda-Goodchild* hearing was inadequate. Jiles is entitled to withdraw his guilty plea and to be granted a new and sufficient *Miranda-Goodchild* hearing. After this hearing, he is entitled to a trial if he so desires.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded for proceedings consistent with this opinion.