# COURT OF APPEALS
# DECISION
# DATED AND FILED

## September 9, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP191-CR**

STATE OF WISCONSIN

Cir. Ct. No. **2021CF56**

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

V.

NAJEE S. HUDSON,

   DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for La Crosse County: RAMONA A. GONZALEZ, Judge. *Reversed and cause remanded for further proceedings.*

Before Fitzpatrick, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State appeals a circuit court order granting Najee Hudson's motion to suppress statements made during a custodial interrogation. The State argues that the circuit court applied the wrong legal standard in determining that Hudson's statements should be suppressed, and that the court improperly cut short the presentation of evidence at the suppression hearing by issuing its ruling before the State had finished presenting its case. We agree. The circuit court's ruling—that Hudson did not knowingly, intelligently, and voluntarily waive his *Miranda* rights, that his subsequent statements were involuntary, or both—was based almost exclusively on a single fact that is not decisive under either inquiry. When properly applied, both inquiries consider the totality of the circumstances, and the truncated record made during the circuit court proceeding does not allow us to determine whether, under the totality of the circumstances, Hudson's statements should be suppressed based on reasoning other than that provided by the circuit court. We therefore reverse the suppression order and remand for a full and fair hearing on Hudson's motion.

## BACKGROUND

¶2 Law enforcement executed a search warrant of Najee Hudson's home to obtain evidence of an alleged sexual assault. Hudson was arrested during the search, transported to a police station, and interrogated by Investigator Brooke

Pataska. Pataska's body camera recorded the entirety of the custodial interrogation, which lasted just over one hour.[1]

¶3 The State charged Hudson with several counts related to sexual assault and bail jumping. In due course, Hudson moved to suppress all statements made during his custodial interrogation on at least two separate bases: (1) that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights consistent with the Fifth Amendment's privilege against self-incrimination; and (2) that his statements were involuntary, and their use at trial would violate the Fourteenth Amendment's due process clause, because they were not the product of his "free and unconstrained will," and instead were the product of improper police pressure.

¶4 The circuit court held a *Miranda-Goodchild* hearing on Hudson's motion to suppress.[2] At the hearing, the prosecutor began to present her case by calling Pataska as the State's first witness. The prosecutor also moved to admit Pataska's body camera footage and a transcript of the interrogation into evidence.

¶5 The prosecutor announced her intention to play the video recording of the interrogation from minute mark 00:25 to 09:39, and to periodically pause the recording to ask questions. The 09:39 minute mark is significant because it is

---

[1] The parties agree that the interrogation was "custodial." Custodial interrogations have been defined to mean "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[2] Named after *Miranda*, 384 U.S. 436, and *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965), such evidentiary hearings are designed to determine the adequacy of *Miranda* warnings, whether the defendant validly waived his constitutional rights, and whether the ensuing statements were voluntarily made. *See State v. Jiles*, 2003 WI 66, ¶25, 262 Wis. 2d 457, 663 N.W.2d 798.

at 09:39 that Hudson signed a form that contained a "Statement of *Miranda* Rights" on the top half, and a "Waiver of Rights" on the bottom half. However, as discussed at greater length below, the circuit court cut off the presentation of evidence and issued its ruling before the prosecutor was able to play that portion of the video.

¶6     We now summarize the portions of the video that were played at the hearing. After Hudson and Pataska entered the interrogation room, Hudson started to tell Pataska about being detained at his home, and he indicated that no one had explained to him what was going on. Pataska responded that Hudson had been arrested, and that she had to read Hudson his rights before she could continue to ask him questions.

¶7     During the exchange that followed, which lasted several minutes, Pataska repeatedly told Hudson that she could not talk to him until she read him his rights, and she did in fact read Hudson the statement of rights, as well as a portion of the waiver of rights form. Hudson expressed concern that he was supposed to be home when his mother was done with work and that, if he waited to speak with Pataska until his lawyer arrived, he would have to wait in jail and would not be home to help his mother. At times, Hudson asserted that he wanted to talk to Pataska, at other times, he indicated that he did not "want to sign [his] rights over," and at yet other times, he reviewed the waiver of rights form and expressed confusion and concern about its contents.

¶8     At minute 08:30 of the recorded interview, Hudson, who was looking at the form, said that he should have already left for home. Pataska responded, "that's where I want to figure out what happened, and figure out what was going on." Hudson stated "I want to talk to you, I want to talk about this,"

4

and he reached for a pen on the table. He then stated, "I do have a lawyer but like he'll be contacted …." Hudson huffed in apparent frustration, picked up the pen, and said: "I really feel like this means something else right now that this is [inaudible] like me signing my fucking rights over."[3]

¶9      At that point, the prosecutor paused the recording to ask Pataska a question. As Pataska began to answer, the circuit court interrupted her testimony, stating: "I don't see anything in the submissions that said that anybody checked to see how long it would take a lawyer to get there. Did anybody do that during the course of this interview?" Pataska said she had not. The court responded: "All right. That's enough for me. I'm gonna suppress the statement."

¶10     The circuit court explained its ruling as follows. Hudson was "very clearly not understanding" what was going on, and he was "concerned" about the length of time it was going to take to get a lawyer to speak with him. Pataska should have made efforts to "find out how long it would take an attorney to get there to speak with him." If Pataska "had at least made the call" and informed Hudson that it would "take a half hour or 20 minutes" for a lawyer to arrive, then Hudson "would have had the information [he] needed to make a knowing and voluntary waiver."

---

[3] The parties appear to dispute what Hudson's precise words were at this point in the recording. The State, citing the transcript of the recording, asserts that Hudson said: "I really feel like this means something else right now. Like this is not necessarily in my [inaudible]." In contrast, Hudson asserts that he said: "I really feel like this means something else right now. This, like, this is not me signing my motherfucking rights or whatever." We note that Hudson's version appears more consistent with what we hear on the video recording, as represented above. However, his precise wording need not be resolved because, under any version, Hudson was expressing confusion over the meaning of the waiver of rights form.

¶11     The prosecutor asked the circuit court to allow her to continue playing the video recording.  The court refused, stating "the issue for me is a determinative issue."  It reiterated:

> It … was clear [Hudson] was concerned about timing.  It was clear he was concerned about … waiting in jail.  It would have been a simple matter for the … officer to find out how long it would take a lawyer to get there, and then he would have had the information necessary to make a knowing and voluntary waiver.

¶12     The prosecutor then asked if she could continue presenting witness testimony, and she represented that "this was not the first time Mr. Hudson had been read his rights and waived [them]."  The circuit court again refused, explaining:

> Again it's not a question about whether he had known his rights or how often he's read his rights.  The issue is what information he had at this particular time to make the decision that was knowing and voluntarily made, and it was clear that the issue here was timing; and he needed to have the information about how long it would take a lawyer to get there.…  [A]nd that is why I'm granting the motion to suppress.

¶13     The prosecutor objected on the ground that the pertinent legal standard is "a balancing test," and "that there are factors to be taken into consideration[.]"  The circuit court stated that Pataska's failure to obtain information about how long it would take to get a lawyer there was "for me a determining factor" and that, if the court was wrong, the State could "prove that on appeal."

¶14     Hudson's attorney then asked the circuit court to clarify whether it was granting Hudson's motion to suppress on the ground that his *Miranda* waiver was invalid, or that his subsequent statements were involuntary, or both.  The

court stated: "Voluntariness grounds .... I don't believe that it was knowing and voluntarily made when he was denied the opportunity to know how long the lawyer would take to get there." From the court's statement, it was not apparent whether the "it" that the court determined was "unknowing" and "involuntary" was Hudson's waiver of rights, his subsequent statements to Pataska, or both.

¶15 The circuit court issued a written order granting Hudson's motion to suppress on the "grounds of voluntariness." The written order provides that "[t]he court found that Mr. Hudson's statements to law enforcement … were not knowingly and voluntarily made because he was denied the opportunity to know how long it would take to receive legal counsel prior to making a statement to law enforcement." The State appeals the order.

## DISCUSSION

¶16 The Fifth Amendment to the United States Constitution sets forth a privilege to remain silent in the face of government accusation, which is often referred to as the privilege against self-incrimination. U.S. CONST. amend. V;[4] *State v. Rejholec*, 2021 WI App 45, ¶18, 398 Wis. 2d 729, 963 N.W.2d 121. To safeguard that privilege, the State may not use statements stemming from an accused's custodial interrogation at a subsequent trial unless it demonstrates that it used procedural safeguards prior to taking the accused's statements. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Prior to any questioning, the accused must be

---

[4] *See also* WIS. CONST. art. I, § 8(1) ("No person … may be compelled in any criminal case to be a witness against himself or herself."). Wisconsin courts have generally interpreted Wisconsin's self-incrimination clause consistently with the United States Supreme Court's interpretations of the Fifth Amendment. *See State v. Ward*, 2009 WI 60, ¶18 & n.3, 318 Wis. 2d 301, 767 N.W.2d 236.

warned that he has the right to remain silent, that any statement he makes may be used in evidence against him, and that he has a right to the presence of an attorney (either retained or appointed). *Id.*; *see also **Moran v. Burbine***, 475 U.S. 412, 420 (1986). A defendant may waive these rights and proceed with an interrogation, provided that his waiver was voluntarily, knowingly, and intelligently obtained. *Miranda*, 384 U.S. at 444.

¶17 Separately, the Fourteenth Amendment forbids the use of an involuntary confession for purposes of prosecution. U.S. CONST. amend. XIV;[5] *see **Rejholec***, 398 Wis. 2d 729, ¶21; ***State v. Jiles***, 2003 WI 66, ¶32, 262 Wis. 2d 457, 663 N.W.2d 798. The admission of an involuntary statement into evidence at trial is a violation of the accused's constitutional right to due process. ***State v. Vice***, 2021 WI 63, ¶28, 397 Wis. 2d 682, 961 N.W.2d 1 (citing ***State v. Hoppe***, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407).

¶18 When the State seeks to introduce an accused's custodial statements into evidence and the defendant challenges their admission, the State has the burden of proving by a preponderance of the evidence that it has complied with these constitutional dictates. ***Jiles***, 262 Wis. 2d 457, ¶26; ***State v. Lee***, 175 Wis. 2d 348, 359, 499 N.W.2d 250 (Ct. App. 1993). This requires the State to prove that the accused was adequately informed of his ***Miranda*** rights and validly

---

[5] *See also* WIS. CONST. art. I, § 8(1) ("No person may be held to answer for a criminal offense without due process of law."). Wisconsin courts have generally interpreted the protections against coerced confessions provided by Wisconsin's due process clause consistently with the United States Supreme Court's interpretations of the Fourteenth Amendment's due process clause. *See **Ward***, 318 Wis. 2d 301, ¶18 & n.3.

waived those rights and, also, that his statements were themselves voluntary.[6] *See Jiles*, 262 Wis. 2d 457, ¶26; *Lee*, 175 Wis. 2d at 359.

¶19 On appeal, the State asserts that the circuit court erred in suppressing Hudson's statements, and it requests that we either reverse the court's order or remand with instructions to hold a full and fair suppression hearing and apply the proper legal standard. The State bases its argument exclusively on its analysis of the voluntariness of Hudson's statements, and it makes no argument about whether Hudson validly waived his *Miranda* rights.[7] Hudson, in contrast, argues that the circuit court's ruling can and should be sustained, whether on involuntariness grounds, *Miranda* waiver grounds, or both.

¶20 For the reasons we now explain, we conclude that, whether the circuit court suppressed Hudson's statements because his *Miranda* waiver was

---

[6] We observe that, under the "impeachment exception," "'[a] finding that statements were obtained in violation of *Miranda* does not inexorably lead to a finding of involuntariness with the attendant prohibition against impeachment use of the statements.'" *State v. Rejholec*, 2021 WI App 45, ¶27 & n.10, 398 Wis. 2d 729, 963 N.W.2d 121 (quoting *State v. Mendoza*, 96 Wis. 2d 106, 118, 291 N.W.2d 478 (1980)). "'A statement of the defendant made without the appropriate *Miranda* warnings, although inadmissible in the prosecution's case-in-chief, may be used to impeach the defendant's credibility if the defendant testifies to matters contrary to what is in the excluded statement.'" *Id.* (quoting *Mendoza*, 96 Wis. 2d at 118). "'It is only if the statements are also found to be involuntary that their use for impeachment purposes is precluded.'" *Id.* (quoting *Mendoza*, 96 Wis. 2d at 118-19).

[7] In its reply brief, the State insists that the circuit court's suppression ruling was based exclusively on Fourteenth Amendment voluntariness grounds. It further contends that we could not sustain the court's ruling on *Miranda* waiver grounds because the State did not raise the *Miranda* waiver issue in its notice of appeal or appellate brief and because there are "simply … no findings of fact" or "any decision [for this court] to review." These arguments are factually and legally wrong. As a factual matter, although the circuit court stated at times that Hudson's statements were involuntary, it also stated at other times that Hudson's waiver was not knowing and voluntary. And as a legal matter, we are entitled to affirm a circuit court's ruling on grounds other than those expressed by the circuit court. *See State v. Trecroci*, 2001 WI App 126, ¶45, 246 Wis. 2d 261, 630 N.W.2d 555; *State v. Baudhuin*, 141 Wis. 2d 642, 648, 416 N.W.2d 60 (1987).

invalid, his statements were involuntary, or both, the court applied the wrong legal standard. For the reasons we explain below, the fact that Pataska did not look into or inform Hudson of how long it would take for an attorney to arrive is not by itself decisive under either inquiry.

### I. *Miranda* Waiver

¶21 As discussed above, to admit a defendant's custodial statements into evidence, the State must prove by a preponderance of the evidence that the defendant received and understood a set of *Miranda* warnings sufficient to advise him of his constitutional rights, and that he validly waived those rights following the administration of the warnings. *Jiles*, 262 Wis. 2d 457, ¶26.

¶22 A waiver is valid if it is voluntary, knowing, and intelligent. *Rejholec*, 398 Wis. 2d 729, ¶19. A waiver is "voluntary" if it is "'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.*, ¶29 (quoting *Moran*, 475 U.S. at 421). A waiver is "knowing and intelligent" if it is "'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Rejholec*, 398 Wis. 2d 729, ¶29 (quoted source omitted); *State v. Ward*, 2009 WI 60, ¶30, 318 Wis. 2d 301, 767 N.W.2d 236. For a waiver to have "'been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,'" *Lee*, 175 Wis. 2d at 356 (quoted source omitted), the accused must at least be "cognizant at all times of 'the State's intention to use [his] statements to secure a conviction' and of the fact that [he] can 'stand mute and request a lawyer.'" *Id.* at 365 (quoted source omitted). However, an awareness of *every* consequence of waiving one's rights is not required, nor is an awareness of "all information that might be 'useful'" or "that might 'affect one's decision to

confess.'" *Id.* at 364-65 (quoted source omitted). For instance, knowing a list of "'all the possible subjects of questioning in advance of the interrogation,'" though potentially useful to the defendant in assessing the wisdom of waiving his rights, is not required for the waiver to be knowing and intelligent. *Id.* at 365 (quoted source omitted).

¶23 Law enforcement's "'deliberate or reckless' withholding of information" can render a waiver unknowing and unintelligent if such tactics "deprive[] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Moran*, 475 U.S. at 423-24; *see also* *Rejholec*, 398 Wis. 2d 729, ¶¶30, 34 (addressing misrepresentations). However, to the extent that such withholding of information deprives a defendant of non-essential information, it does not render his waiver unknowing or unintelligent. *See* *Ward*, 318 Wis. 2d 301, ¶34.

¶24 As discussed above, the circuit court's stated reason for suppressing Hudson's statements was that Pataska did not find out and inform Hudson how long it would take for his attorney to arrive. However, Hudson does not defend the circuit court's analysis by pointing to any United States Supreme Court or Wisconsin case that requires a defendant to know how long it will take for his attorney to arrive, or that prohibits law enforcement from withholding such information, to ensure that the defendant comprehends the nature of his rights or the consequences of the decision to abandon them. Indeed, United States Supreme Court and Wisconsin cases appear to point in the opposite direction. *See* *Moran*, 475 U.S. at 432-24 (concluding that police's failure to inform a suspect that his attorney was attempting to call him did not affect suspect's knowing, intelligent,

and voluntary waiver); ***State v. Hanson***, 136 Wis. 2d 195, 213-15, 401 N.W.2d 771 (1987); ***Ward***, 318 Wis. 2d 301, ¶34.[8]

¶25    The circuit court's focus on this single factor was also inconsistent with other case law, which requires an assessment of the totality of the circumstances. *See **State v. Hambly***, 2008 WI 10, ¶91, 307 Wis. 2d 98, 745 N.W.2d 48 (discussing how the waiver analysis requires a case-by-case examination of all facts and circumstances, including "the suspect's background, experience, and conduct"); ***Rejholec***, 398 Wis. 2d 729, ¶29 (only if the totality of the circumstances demonstrates that a defendant, with the requisite level of comprehension, made an uncoerced choice, may a court conclude that a waiver was knowing, intelligent, and voluntary).

¶26    Accordingly, to the extent that the circuit court determined that Pataska's failure to inform Hudson of how long it would take for his attorney to arrive decisively rendered his waiver unknowing, unintelligent, or involuntary, we conclude that the circuit court applied an incorrect legal standard.

## II. Voluntariness of Statements

¶27    As discussed above, to admit a defendant's statements into evidence, the State must also prove by a preponderance of the evidence that his statements

---

[8] In ***Hanson*** and ***Ward***, law enforcement failed to inform the respective suspects that their attorneys were waiting outside of the interrogation room, ready and willing to speak with them. *See **State v. Hanson***, 136 Wis. 2d 195, 213-15, 401 N.W.2d 771 (1987); ***Ward***, 318 Wis. 2d 301, ¶34. In both cases, our supreme court concluded that the failure to advise the suspects of "the immediate availability of a particular attorney" did not in itself render their waivers unknowing, unintelligent, or involuntary. ***Hanson***, 136 Wis. 2d at 208; ***Ward***, 318 Wis. 2d 301, ¶36. In ***Hanson***, the court explained: "Although a suspect who was ready to waive his rights might change his mind when told an attorney was waiting to see him, the critical factor would be the convenience of seeing the attorney, not the intelligent or perceived need for legal counsel." ***Id.*** at 212.

were voluntary. *State v. Dobbs*, 2020 WI 64, ¶72, 392 Wis. 2d 505, 945 N.W.2d 609. Statements are "voluntary" if they are "'the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist.'" *Ward*, 318 Wis. 2d 301, ¶18 (quoted source omitted).

¶28 In determining whether a defendant's statements were voluntary, we again examine the totality of the circumstances. *Hoppe*, 261 Wis. 2d 294, ¶38. The totality of the circumstances contemplates balancing the characteristics of the defendant against the police tactics employed to obtain the defendant's statements. *Id.*, ¶¶38-39. In evaluating police conduct, we examine the length of the questioning, the general conditions or circumstances in which the statement was taken, whether any excessive physical or psychological pressure was used, and whether any inducements, threats, methods, or strategies were used in order to elicit a statement from the defendant. *Id.*, ¶39. To evaluate the defendant's personal characteristics, we consider his "age, education and intelligence, physical or emotional condition, and prior experience with law enforcement." *Id.*

¶29 However, "[w]e cannot properly label a statement involuntary unless there is 'some affirmative evidence of improper police practices deliberately used to procure a confession.'" *Dobbs*, 392 Wis. 2d 505, ¶72 (quoted source omitted). Therefore, "[b]efore we balance personal characteristics against police pressures," we must make a threshold finding of coercion or improper police tactics. *See Vice*, 397 Wis. 2d 682, ¶ 31. It is important to note that coercive or improper conduct may take "subtle forms," *State v. Clappes*, 136 Wis. 2d 222, 238, 401 N.W.2d 759 (1987), and that "coercion can be mental as well as physical." *Miranda*, 384 U.S. at 448; *see also Vice*, 397 Wis. 2d 682, ¶48 (considering the

cumulative coercive effect of tactics that were not deemed coercive in and of themselves). "To aid us in identifying coercive police conduct, we review cases in which courts have analyzed various police tactics to determine whether they were coercive." *Id.*, ¶33.

¶30 Again, Hudson does not defend the circuit court's analysis by pointing to any United States Supreme Court or Wisconsin case concluding that law enforcement's failure to advise a suspect of how long it will take for his attorney to arrive is improper or coercive. And, once more, Wisconsin precedent appears to point in the opposite direction. *See Ward*, 318 Wis. 2d. 301, ¶37 (concluding that law enforcement's deliberate withholding of information on the status and location of Ward's attorney did not affect the voluntariness of Ward's statements).

¶31 Additionally, even if Pataska's failure to inform Hudson of how long it would take for his attorney to arrive amounted to a coercive or improper police tactic, it would not decisively render Hudson's statements involuntary. *Vice*, 397 Wis. 2d 682, ¶35 ("[W]hen a defendant establishes coercive police tactics, the resulting statement is not automatically rendered involuntary."). Rather, the conduct must still be evaluated in light of the totality of the circumstances and balanced against other conditions and the personal characteristics of the accused. *See id.*

¶32 Accordingly, to the extent the circuit court determined that Pataska's failure to inform Hudson of how long it would take for his attorney to arrive decisively rendered his subsequent statements involuntary, we conclude that the circuit court applied an incorrect legal standard.

### III. Remedy

¶33　Having concluded that the circuit court applied incorrect legal standards when determining that Hudson's statements must be suppressed, we now briefly address the parties' arguments that we could affirm or reverse the court's order using different reasoning and the correct legal standards. Hudson argues that we should affirm the circuit court's order on alternative grounds, and the State argues that we should reverse.

¶34　The validity of a waiver is a question of law that we review de novo, *see Ward*, 318 Wis. 2d 301, ¶17, and, in assessing the voluntariness of statements we independently apply the constitutional principles of due process to the facts as found by the circuit court. *See Dobbs*, 392 Wis. 2d 505, ¶29. As such, we would typically be free to reverse the circuit court's legal conclusions on either inquiry, or to affirm based on alternative reasoning or grounds other than those employed by the circuit court. *See State v. Baudhuin*, 141 Wis. 2d 642, 648, 416 N.W.2d 60 (1987). However, as we have discussed, both inquiries require us to examine the totality of the circumstances and here, the circuit court truncated the presentation of evidence before either side could elicit facts that might be relevant to a totality-based inquiry. The State carried the burden of proving the validity of Hudson's *Miranda* waiver and the voluntariness of his statements, and the circuit court refused to allow the prosecutor to finish playing the portions of the video recording she wanted to present, to finish her examination of Pataska, or to present any additional evidence necessary to meet the State's burden of proof. Likewise, Hudson was precluded from presenting evidence that could be relevant to either or both inquiries. Under these circumstances, the record developed at the *Miranda-Goodchild* hearing does not allow us to assess whether, based on the totality of the circumstances, Hudson's *Miranda* waiver was voluntary, knowing, and intelligent,

or whether his subsequent statements were themselves voluntary. Accordingly, we remand this case to the circuit court to conduct a full and fair ***Miranda-Goodchild*** hearing.

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).