STATE EX REL. GOODCHILD, Petitioner, v. BURKE, Warden, Respondent.*

*March 4—March 30, 1965.*

* Motion for rehearing denied, without costs, on June 25, 1965.

249

For the petitioner there was a brief and oral argument by *Patrick A. Dewane* of Manitowoc.

For the respondent the cause was argued by *William A. Platz* and *Betty R. Brown,* assistant attorneys general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

WILKIE, J. Five principal issues are presented by this petition and return:

1. Is the petition for *habeas corpus* premature?

2. Was it constitutional error not to appoint counsel for petitioner on his "arraignment"?

3. Did admission of confessions and statements obtained between the first appearance in municipal court and the time counsel was appointed constitute constitutional error?

4. Was there constitutional error in the procedure on the trial where the trial judge did not make a determination as to the voluntariness of defendant's confessions before they were received in evidence?

5. If there was constitutional error in the manner of determining the voluntariness of the confessions, was such error waived when counsel, for strategic reasons, failed to object to their receipt in evidence?

*Prematurity of Petition.*

On April 4, 1961, petitioner was paroled. On July 10, 1961, Goodchild was convicted on his plea of guilty of an April burglary in the municipal court of Milwaukee, and sentenced (under the repeater statute) to not more than eighteen years, the term to run consecutively to the murder sentences. His parole on the murder sentences was revoked on June 2, 1961, effective May 9, 1961. Petitioner has filed a *habeas corpus* (dated March 26, 1964) contesting his burglary conviction, and that petition is outstanding.

The attorney general contends that Goodchild's instant petition is premature since, even if the murder convictions were vacated, he would still be subject to the eighteen-year burglary term and could not be discharged from custody.

Historically, *habeas corpus* was utilized to actually free the accused and it is true that, even if the writ Goodchild prays for here were issued, he would not be entitled to immediate liberty. Goodchild asserts claims of constitutional error that would invalidate the murder convictions. We have consistently held that such claims may be reviewed by *habeas corpus*.[3]

There are at least three reasons why we should not consider this petition premature:

1. Although voiding of these convictions at any time prior to the length of the sentence imposed for the burglary could not absolutely result in Goodchild's release, if these two

---

[3] *Babbitt v. State* (1964), 23 Wis. (2d) 446, 452, 127 N. W. (2d) 405, and cases cited therein. *Wolke v. Fleming* (1964), 24 Wis. (2d) 606, 613, 614, 129 N. W. (2d) 841.

murder convictions were set aside, his parole and conditional-release opportunities would then be based on the single burglary sentence and not in conjunction with the murder sentences.

2. Another reason for taking action on this petition now is that the legislature has provided no post-conviction procedure to adjudicate alleged constitutional errors surrounding a conviction once the time for appeal has passed,[4] unless it be by petition for the writ of *habeas corpus* addressed to this court.[5]

3. Furthermore, where *habeas corpus* results in the delivery of a prisoner for an ordered new trial or other hearing years after his conviction either or both the prosecution and defense may be handicapped by the dimming memory of witnesses that may be still available and by the death or absence of other witnesses. Where constitutional rights may be involved it seems only logical to consider these grievances when presented rather than to postpone our consideration until years later when these difficulties may be aggravated.

We proceed then to a detailed consideration of the petition on its merits.

### Denial of Counsel.

Goodchild did not have counsel at the March 17th and March 30th "arraignments" in the municipal court for the second-degree murders of his father and Becker respectively.

These were not "arraignments" although the magistrate so denoted them. The term "arraignment" is reserved for an appearance in a court having jurisdiction to take a plea to an information or indictment that has been filed and to which the court asks the defendant to plead.[6] The municipal court here told the defendant that he had no power to take a plea

---

[4] Sec. 958.13, Stats.
[5] Sec. 292.03, Stats.
[6] Ch. 355, Stats. 1951.

and the appearances made by the defendant, either on March 17th or March 30th, were not at an "arraignment" but appearances before a magistrate before whom the two complaints were returnable.

At both of these initial appearances Goodchild was advised "of his right to the aid of counsel" and in open court he told the court he did not want counsel. After waiving the preliminary examination in each instance he was bound over to circuit court.

.On March 20, 1953, the defendant was brought before the circuit court on the charge of the second-degree murder of his father. He did not plead to the information which had been read to him. In fact, the hearing was limited to a motion by the district attorney for a mental and physical examination of the defendant. At the hearing Goodchild did state he needed an attorney but after the court repeatedly advised him he could have such counsel, Goodchild stated he would wait until he came back from the examination before he took an attorney. The circuit court ordered a mental and physical examination of the defendant at the Bradley Memorial State Hospital at Madison.

On March 30, 1953, after waiving the preliminary on the charge of the second-degree murder of Becker, Goodchild was brought before the circuit court for arraignment on this charge. Again he entered no plea. The court also entered an amended order directing a mental and physical examination of the defendant at the Central State Hospital at Waupun since the Bradley Memorial State Hospital at Madison had been unable to complete the examination. He requested the appointment of Attorney Patrick Dewane, whom the court, then and there, appointed.

Mr. Dewane represented the defendant at all related and subsequent proceedings, either in the municipal court or the circuit court. Petitioner now contends that the failure of the court to provide him with an attorney at his "arraignment"

violates his Sixth amendment (United States constitution) right to counsel.

From March 30, 1953, Goodchild was represented by counsel. Before Attorney Dewane was appointed as counsel to the defendant he had appeared at two preliminaries, where he refused counsel and waived the preliminary examination. At the two related arraignments in circuit court he entered no plea and on March 30th, when he asked for counsel the appointment was made immediately. Counsel represented him at the preliminary examination on the two amended counts of first-degree murder, the only preliminary held on charges on which the defendant was actually tried. Counsel represented him at the subsequent arraignment in circuit court when petitioner, for the first time, entered a plea, and in all phases of the circuit court proceedings, both before and after the trial. Thus, there is no merit whatsoever to his claim that he was denied counsel at the so-called "arraignments" or at any other stage in the court proceedings.

*Confessions Obtained Between First Court Appearance and the Time Counsel was Appointed.*

Goodchild, relying on *Spano v. New York,*[7] *Massiah v. United States,*[8] and *Escobedo v. Illinois,*[9] contends that any confessions made after his first appearance in municipal court on March 17th and before March 30th (when counsel was appointed) were inadmissible. Involved are three statements or confessions, all given on March 26th. Exhibit No. 23 is a tape recording of a statement made at the state crime laboratory and Exhibit No. 22 is a transcription of the recorded statement. Exhibit No. 26 is a confession he signed after he was returned to Manitowoc. The cases Goodchild cites are distinguishable. In *Spano* the accused, despite repeated pleas

[7] (1959), 360 U. S. 315, 79 Sup. Ct. 1202, 3 L. Ed. (2d) 1265.
[8] (1964), 377 U. S. 201, 84 Sup. Ct. 1199, 12 L. Ed. (2d) 246.
[9] (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977.

to see his attorney and after approximately eight hours of continual questioning, was tricked into confessing by the repeated urging and misrepresentations of a friend who was a policeman. *Massiah* involved the planting of a hidden microphone in the car of a coaccused who had become a co-operator with the police. The co-operator then deliberately elicited incriminating statements from Massiah who was out of jail on bail. Not only was the accused in *Escobedo,* despite attempts to do so, not allowed to consult his counsel during a lengthy interrogation by the police, but his attorney, who was at the police station, was not allowed to see his client.

The opinions in the cases Goodchild relies on make it clear that the total circumstances must be considered when dealing with a particular situation. Unlike the defendants in these cases, Goodchild was in no way tricked or misled. No surreptitious or extended interrogations took place. He was not threatened or pressured. Goodchild admitted that he was well treated. There is no claim of brutality. He was never denied access to or the assistance of counsel; in fact, he refused counsel when he first appeared in municipal court on March 17th and there is nothing in the record indicating that he ever requested counsel until his arraignment in circuit court on March 30th. He was repeatedly advised of his right to counsel. A consideration of all the facts demonstrates a lack of extenuating circumstances such as were present in *Spano, Massiah,* and *Escobedo,* which would render any statement taken before counsel had been appointed inadmissible.

This analysis is contrary to the holding and rationale adopted by the supreme court of California in the very recent case of *People v. Dorado.*[10] *Dorado* interprets *Escobedo* and *Massiah* as precluding the admission of a confession even when the defendant does not request counsel. The

---

[10] (1965), 42 Cal. Rptr. 169, 398 Pac. (2d) 361.

court held (in a four-three decision) that the confession had constitutional defects because:

"(1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." [11]

However, *Dorado* is distinguishable. The California court recognized that *Escobedo* permits an accused to waive counsel, but emphasizes the point that a right which is not known cannot be waived.[12] The crucial fact difference is that Dorado was not advised of any rights in regard to counsel while Goodchild was and expressly waived his right to be represented. Thus point (4) of the holding is not pertinent to the present case.

Not only has the decision in *Dorado* gone further than any pronouncement of the United States supreme court, but the *Dorado* rule is contrary to several very recent Wisconsin decisions. In *Pulaski v. State* [13] and *State v. Brown* [14] confessions were admitted even though obtained while the accused was unrepresented. It does not appear whether either Pulaski or Brown was advised of his right to counsel, but Pulaski maintained that his request for counsel had fallen on deaf ears. Although the opinions did not allude to *Massiah* or *Escobedo,* the holdings in *Brown* and *Pulaski* that the confessions were properly admitted are contrary to the ruling in *Dorado*.

---

[11] Id. 398 Pac. (2d) at page 371.
[12] Id. 398 Pac. (2d) at page 370.
[13] (1964), 24 Wis. (2d) 450, 129 N. W. (2d) 204.
[14] (1964), 25 Wis. (2d) 413, 130 N. W. (2d) 760.

In *Browne v. State* [15] the defendant made certain admissions after his arrest. The court found that there was no error in introducing them in evidence. On rehearing, Browne urged that *Escobedo* (which had been decided by the United States supreme court since our original decision in *Browne*) was controlling. After recognizing, as do the dissenters in *Dorado,* that *Escobedo* turned on particular circumstances, this court pointed out that the only common fact in *Browne* and *Escobedo* was a failure to advise the accuseds of their right to remain silent. The court said:

"He made no request to consult with an attorney nor did any attorney seek to confer with him. We deem that this fully distinguishes *Escobedo* and that it does not control the result here.

"With respect to the failure to advise defendant of his constitutional right to remain silent, *Holt v. State* (1962), 17 Wis. (2d) 468, 479, 117 N. W. (2d) 626, held that there is no hard-and-fast rule that an accused must be informed of his constitutional right not to incriminate himself as a condition precedent to admission into evidence of any admissions or confessions made to the police. The most that *Escobedo* holds in this respect is that the failure to so inform a criminal suspect under arrest, when coupled with other circumstances, may be sufficient to require exclusion of any admission made by him. We find here a total lack of any other circumstances which require exclusion of the instant admissions." [16]

Thus, the express holding of *Browne* is contrary to that of *Dorado*. We believe that this court's interpretation of *Escobedo* in *Browne* is correct. [17] We reject the interpretation made by the California court in *Dorado*.

---

[15] (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, 131 N. W. (2d) 169.

[16] Id. at page 511g.

[17] The United States supreme court denied certiorari in the *Browne Case,* February 1, 1965, 379 U. S. 1004, 85 Sup. Ct. 1094, 13 L. Ed. (2d) 706. Rehearing denied March 29, 1965.

*Confession Procedure.*

Goodchild maintains that his statements and confessions were involuntarily given due to harassment on the part of law-enforcement officers while he was tired, undernourished, and physically and psychologically ill. At the trial the court admitted in evidence all seven confessions and statements. The court followed the established Wisconsin procedure for determining the voluntariness of the confessions. Under this procedure [18] the trial court first passes on the admissibility of the confessions. If clearly involuntary, the confession is not allowed into evidence. If there is a doubt as to its voluntariness, this issue is submitted to the jury with appropriate instructions. A similar procedure that had been followed in New York [19] was recently struck down by the United States supreme court in *Jackson v. Denno,*[20] as being violative of due process.

Jackson had confessed to a murder and, after disputed evidence had been received as to the voluntariness of that confession, under the established New York procedure, the defendant was convicted. After losing his appeals,[21] Jackson sought *habeas corpus* in the federal district court, asserting that his conviction was founded on a confession not properly determined to be voluntary. The writ was there denied [22]

[18] *State v. Bronston* (1959), 7 Wis. (2d) 627, 97 N. W. (2d) 504, 98 N. W. (2d) 468; *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471.

[19] Approved in *Stein v. New York* (1953), 346 U. S. 156, 73 Sup. Ct. 1077, 97 L. Ed. 1522.

[20] *Supra,* footnote 2.

[21] *People v. Jackson* (1961), 10 N. Y. (2d) 780, 177 N. E. (2d) 59; amended opinion (1961), 10 N. Y. (2d) 816, 178 N. E. (2d) 234. Certiorari denied (1961), 368 U. S. 949, 82 Sup. Ct. 390, 7 L. Ed. (2d) 344.

[22] *Application of Jackson* (D. C. N. Y. 1962), 206 Fed. Supp. 759.

and the court of appeals affirmed.[23] The supreme court reversed, holding:

"In our view, the New York procedure employed in this case did not afford a reliable determination of the voluntariness of the confession offered in evidence at the trial, did not adequately protect Jackson's right to be free of a conviction based upon a coerced confession and therefore cannot withstand constitutional attack under the Due Process Clause of the Fourteenth Amendment." [24]

Goodchild contends his convictions for murder were founded on confessions that were not properly determined to be voluntary and under a procedure that is voided by *Jackson v. Denno*.

Our consideration must first be directed to whether this issue should be determined by our court bearing in mind that Goodchild is imprisoned under criminal judgments that have been finalized and to date there has been no precise ruling by the United States supreme court that *Jackson v. Denno* is retroactive. In the instant case Goodchild is deprived of any benefit of the effects of *Jackson v. Denno* invalidating the Wisconsin procedure for determining voluntariness because, as will be detailed below, for strategic reasons no objection was made and, therefore, under the holding in the more recent case of *Henry v. Mississippi* [25] Goodchild waived any constitutional defect that there may have been in that procedure. We reserve any ruling on whether *Jackson v. Denno* is retroactive. Nevertheless, we owe a duty to the trial courts, prosecuting attorneys, the defense bar, and to the citizenry of Wisconsin, to speak clearly on the effect of *Jackson v. Denno* in Wisconsin.

---

[23] *Jackson v. Denno* (2d Cir. 1962), 309 Fed. (2d) 573.
[24] *Supra,* footnote 2, at page 377.
[25] (1965), 379 U. S. 443, 85 Sup. Ct. 564, 13 L. Ed. (2d) 408.

The rationale adopted by the United States supreme court in *Jackson v. Denno* in voiding the New York procedure is spelled out in that opinion. The court states:

"Under the New York procedure, the evidence given the jury inevitably injects irrelevant and impermissible considerations of truthfulness of the confession into the assessment of voluntariness. Indeed the jury is told to determine the truthfulness of the confession in assessing its probative value. As a consequence, it cannot be assumed, as the *Stein* Court assumed, that the jury reliably found the facts against the accused. This unsound assumption undermines *Stein's* authority as a precedent and its view on the constitutionality of the New York procedure. The admixture of reliability and voluntariness in the considerations of the jury would itself entitle a defendant to further proceedings in any case in which the essential facts are disputed, for we cannot determine how the jury resolved these issues and will not assume that they were reliably and properly resolved against the accused. And it is only a reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant and which would permit the jury to consider the confession in adjudicating guilt or innocence.

"But we do not rest on this ground alone, for the other alternative hypothesized in *Stein*—that the jury found the confession involuntary and disregarded it—is equally unacceptable. Under the New York procedure, the fact of a defendant's confession is solidly implanted in the jury's mind, for it has not only heard the confession, but it has been instructed to consider and judge its voluntariness and is in position to assess whether it is true or false. If it finds the confession involuntary, does the jury—indeed, can it—then disregard the confession in accordance with its instructions? If there are lingering doubts about the sufficiency of the other evidence, does the jury unconsciously lay them to rest by resort to the confession? Will uncertainty about the sufficiency of the other evidence to prove guilt beyond a reasonable doubt actually result in acquittal when the jury knows the defendant has given a truthful confession?

"It is difficult, if not impossible, to prove that a confession which a jury has found to be involuntary has nevertheless influenced the verdict or that its finding of voluntariness, if

this is the course it took, was affected by the other evidence showing the confession was true. But the New York procedure poses substantial threats to a defendant's constitutional rights to have an involuntary confession entirely disregarded and to have the coercion issue fairly and reliably determined. These hazards we cannot ignore.

"As reflected in the cases in this Court, police conduct requiring exclusion of a confession has evolved from acts of clear physical brutality to more refined and subtle methods of overcoming a defendant's will.

" '[T]his Court has recognized that coercion can be mental as well as physical, and that the blood of the accused is not the only hallmark of an unconstitutional inquisition. A number of cases have demonstrated, if demonstration were needed, that the efficiency of the rack and the thumbscrew can be matched, given the proper subject, by more sophisticated modes of "persuasion." ' *Blackburn v. Alabama,* 361 U. S. 199, 206.

"Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence. See *Wilson v. United States,* 162 U. S. 613; *United States v. Carignan,* 342 U. S. 36; *Smith v. United States,* 348 U. S. 147. Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, *pro tanto,* takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures

must, therefore, be fully adequate to insure a reliable and clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend. In our view, the New York procedure falls short of satisfying these constitutional requirements. *Stein v. New York* is overruled." [26]

If *Stein* is overruled by *Jackson,* so too must be the Wisconsin version of the New York rule as set forth in *Pollack* and *Bronston.* That is our ruling.

Since the Wisconsin procedure heretofore observed is unconstitutional, we must adopt in its place either the "Massachusetts" or the "orthodox" rule for determining the voluntariness of confessions, both of which rules were approved in *Jackson.*[27] The differences between the rules are considered in detail in both the majority and minority opinions in *Jackson* together with their voluminous footnotes, references, and appendices.

In essence the orthodox rule provides for a separate hearing before the trial judge alone on the issue of voluntariness with a determination by him that is final. If the trial judge finds on a proper record that the confession is involuntary, that is the end of the matter and the jury never considers the confession. If the judge determines that the confession was voluntarily made, the confession is admitted and the jury consideration is limited to its weight and credibility. In essence this rule is but an extension of the present procedure for establishing the admissibility of evidence challenged by a motion to suppress.

The Massachusetts rule differs in that if the trial judge decides that the confession was voluntary the jury considers the admitted confession and by its own deliberations, under instructions, may nevertheless find it to have been involuntarily given, and thus disregard it completely.

[26] *Jackson v. Denno, supra,* footnote 2, at page 386.
[27] *Supra,* footnote 2, at pages 378, 379.

Since *Jackson,* both New York [28] and Oregon [29] have adopted the Massachusetts procedure. One reason given by the New York court is that the New York state constitution commands a jury trial on the issue of voluntariness. Since the jury-trial provision in the New York constitution is stated in general terms,[30] and does not in express terms require a jury trial on the issue of voluntariness, the New York holding must be the court's own interpretation of the New York constitution. This is because the United States constitution contains a similar general-trial-by-jury requirement,[31] and in *Jackson* the court ruled that a procedure whereby the jury does not pass on the voluntariness issue— *i.e.,* the orthodox rule—is proper. Wisconsin also has a general jury provision.[32] We reject the New York rationale. We prefer the *Jackson* rationale and result. Moreover, the determination of whether a confession is voluntary in substance is a ruling on the admissibility of evidence and there is no requirement to have a jury trial on such rulings. There is no constitutional provision requiring the adoption of the Massachusetts procedure in Wisconsin.

In adopting the orthodox rule in Michigan, their supreme court has criticized the Massachusetts approach:

"We think the latter rule contains a contradiction in terms. If we arrogate to the trial judge the right to adjudicate voluntariness, even though that question involves issues of fact, we find no basis in logic in submitting the same question

---

[28] *People v. Huntley* (1965), 15 N. Y. (2d) 72, 204 N. E. (2d) 179, 255 N. Y. Supp. (2d) 838.

[29] *State v. Brewton* (Or. 1964), 395 Pac. (2d) 874.

[30] Sec. 2, art. I, New York constitution. "Trial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; . . ."

[31] Sixth amendment, United States constitution: ". . . the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ."

[32] Sec. 5, art. I, Wisconsin constitution: "The right of trial by jury shall remain inviolate, . . ."

over again to the jury to second-guess him. We believe their determination should be limited to truthfulness, i.e., weight and credibility." [33]

Scholars favor the orthodox rule to assure the defendant a clean-cut adjudication of voluntariness and in order to prevent the jury from merging that issue into the issue of guilt.[34] It appears that a consensus of the board of criminal court judges advocates the orthodox view.

We adopt for the state of Wisconsin the orthodox procedure described in the *Jackson v. Denno* opinion "under which the judge himself solely and finally determines the voluntariness of the confession, . . ." [35]

In the interest of better administration of criminal justice we suggest that wherever practicable the prosecutor should within a reasonable time before trial notify the defense as to whether any alleged confession or admission will be offered in evidence at the trial. We also suggest, in cases where such notice is given by the prosecution, that the defense, if it intends to attack the confession or admission as involuntary, notify the prosecutor of a desire by the defense for a special determination on such issue.[35a]

At the hearing on the issue, the trial judge sitting alone shall make a determination upon a proper record upon the issue of voluntariness. The state shall have the burden of

[33] *People v. Walker* (1965), 374 Mich. 331, 132 N. W. (2d) 87, 91.

[34] Meltzer, Involuntary Confessions: The Allocation of Responsibility between Judge and Jury, 21 University of Chicago Law Review (1954), 317; McCormick, Evidence (hornbook series), p. 233, sec. 112; 3 Wigmore, Evidence (3d ed.), p. 345, sec. 861.

[35] *Supra*, footnote 2, at page 378.

[35a] Sec. 955.09 (3), Stats., lists certain defenses and objections that "must be raised before trial" or "be deemed waived." Confessions are excepted by the express terms of the statute, which provide: "Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence (except

proving voluntariness beyond a reasonable doubt. At this hearing the defendant may take the stand and testify for the limited purpose of making a record of his version of the facts and circumstances under which the confession was obtained.[36] By so doing, the defendant does not waive his right to decline to take the stand in his own defense on the trial in chief. Neither does he waive any of the other rights stemming from his choice not to testify.

Following the hearing the trial judge shall make his determination as to the voluntariness of the confession which determination is upon a question of constitutional fact and shall be supported by findings of fact and conclusions of law.[37] If the confession is held voluntary and admitted, the jury's consideration of that confession and surrounding circumstances shall proceed in accordance with the "orthodox" procedure.

### Defendant's Waiver of Constitutional Error in Procedure as to Voluntariness.

Goodchild's attorney did not object to the introduction into evidence of any of the statements or confessions. Neither did he object to the procedure employed for determining voluntariness of the confession.[38] Relying on *Henry*

---

confessions) must be raised before trial by motion or be deemed waived. But the court may, in its discretion, entertain such motion at a later stage of the trial, in which case the defendant waives any jeopardy that may have attached. A motion to suppress evidence shall be so entertained, with waiver of jeopardy, when it appears that defendant is surprised by the state's possession of such evidence."

[36] *People v. Walker, supra,* footnote 33, 132 N. W. (2d) 87, 91.

[37] *State v. Hoyt* (1964), 21 Wis. (2d) 284, 124 N. W. (2d) 47, 128 N. W. (2d) 645; note concurring opinion.

[38] On appeal no objections were made on either point and the only contention made was that the confessions were not properly submitted to the jury under the then established Wisconsin procedure established in *Pollack, supra,* footnote 18. The lower court

*v. Mississippi,*[39] the attorney general contends that Good-child is bound by this waiver on the part of his attorney. As noted, *Henry* was decided after *Jackson.* It involved evidence purportedly obtained as a result of an illegal search and seizure, but the rule announced would be applicable in a confession case. In *Henry* evidence was admitted at the trial without objection, but on appeal to the state court the defendant alleged that the evidence had been obtained as the result of an illegal search. The court decided that the failure to object was fatal to defendant's appeal. The United States supreme court held that the defendant was bound only if his counsel "knowingly waived" objection to the evidence for purposes of trial strategy.[40] After discussing possible reasons for the failure to object, the court said:

"If either reason motivated the action of petitioner's counsel, and their plans backfired, counsel's deliberate choice of the strategy would amount to a waiver binding on petitioner and would preclude him from a decision on the merits of his federal claim either in the state courts or here."[41]

The case was remanded for a factual determination of whether the failure to object was due to ignorance or " 'for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures.' "[42]

The question of whether it is necessary to object to preserve errors based on constitutional rights is somewhat con-

was affirmed on this count as on all others. See *Goodchild Case, supra,* footnote 1.

[39] *Supra,* footnote 25.

[40] The defendant moved for a directed verdict at the close of the state's case on the ground, among others, that the evidence was erroneously received. The court intimated that this motion may have fulfilled the purpose underlying the rule that timely objection to the introduction of evidence must be made, but declined to answer the question directly. A reading of the opinion, however, indicates that the case was decided on the "trial strategy" ground.

[41] *Henry v. Mississippi, supra,* footnote 25, at page 451.

[42] Id. at page 450.

fused by what actually happened in *Jackson*. There, as in the present case, no objection was made when the confession was introduced. The majority opinion did not even consider the waiver problem.[43] So, but for *Henry*, the fact that there was no objection would seemingly be of no relevance in the determination of this case. The announced holding of *Henry* is inconsistent with what was actually done in *Jackson*, particularly if Jackson's attorney did not raise objections as a matter of trial technique. This inconsistency was not discussed in the *Henry* opinion. However, inasmuch as the *Henry* decision was addressed to the specific issue of waiver while *Jackson* primarily dealt with the practice of submitting a confession to the jury on the voluntariness issue, it is only reasonable to assume that *Henry* is controlling.

In the instant case there is no need for a *Henry* type hearing to determine whether the defendant waived any objection he may have had relative to constitutional error associated with the manner in which the issue of voluntariness of his confessions was resolved.

Goodchild's counsel was a former Manitowoc county district attorney. When the district attorney offered Exhibits No. 14 and No. 15 into evidence, Attorney Dewane declared "I have no objection to them; I want the jury to have the whole thing." Similarly, when Exhibit No. 16 was offered, Dewane again repeated that he had no objection, and further said "I want the jury to have the whole story." He expressly stated that he had no objection to the introduction of any of the other statements or confessions. Dewane himself insisted that the whole of the confession Goodchild had given the psychiatrist (Exhibit No. 25) be received when the district attorney only offered portions of it. At oral argument before this court, Dewane explained that he felt that objecting to the confessions and statements would have alienated the jury

---

[43] Although Mr. Justice CLARK did in his dissent.

against his client. An examination of the record and counsel's explanation on oral argument indicate beyond any doubt that Attorney Dewane deliberately declined to object for tactical reasons.

The court suggested in *Henry* that under exceptional circumstances the accused is not precluded from asserting constitutional claims despite counsel's strategy.[44] There was no elaboration in the opinion of just what might constitute such circumstances. Attorney Dewane defended Goodchild in an able and vigorous fashion. That a conviction nonetheless resulted is not enough of itself to declare that the trial technique employed by counsel was so unwise or questionable as to relieve Goodchild of the consequences of his counsel's waiver. Indeed, Goodchild was not convicted of first-degree murder as charged but of the included lesser offense of second-degree murder.

We conclude that because of *Henry,* Goodchild waived any constitutional error that was involved in the manner in which the issue of voluntariness was resolved.

There is no merit in any other grounds for the issuance of the writ as contained in the subject petition.

*By the Court.*—Issuance of writ of *habeas corpus* denied.

---

[44] *Henry v. Mississippi, supra,* footnote 25, at page 451.