COURT OF APPEALS
DECISION
DATED AND FILED

September 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2020AP18-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2015CF1201

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

PHILIP N. HOLLAND,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Waukesha County: LEE S. DREYFUS, JR., Judge. *Affirmed*.

Before Gundrum, P.J., Reilly and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Philip N. Holland appeals a judgment of conviction for first-degree intentional homicide, theft of moveable property and possession of an illegally obtained prescription.  He argues the circuit court erroneously denied his motion to suppress statements he made during custodial interrogation, the court should have granted his mistrial motion following a witness's surprise testimony that Holland had told her he had committed a previous murder, and a jury instruction was insufficient to apprise the jury of the law of self-defense so as to constitute plain error.  We reject Holland's arguments and affirm.

## BACKGROUND

¶2      Timothy Minkley was found dead on September 14, 2015, having suffered nine "chop wounds" to his head.  Police recovered the victim's cell phone and identified Holland as the recipient of the last text message he had sent.  In subsequent days, police interviewed Holland's girlfriend and ex-girlfriend, both of whom told police that Holland had made incriminating statements to them on September 14.

¶3      Holland was arrested on September 16 and transported to the Waukesha Police Department, where he was questioned for a total of approximately twelve hours over three days.  During the first day's questioning, after Holland was read *Miranda* warnings,[1] he confessed to killing Minkley with a hatchet.  On subsequent days, Holland offered inconsistent descriptions of the events that preceded the homicide, and he helped police recover the hatchet from where he had disposed of it in a river.  After each day's questioning, Holland was

_____

[1] *See **Miranda v. Arizona**,* 384 U.S. 436 (1966).

returned to his jail cell. The officers did not reissue *Miranda* warnings or ask Holland if he recalled the warnings he had been given on the first day of questioning.

¶4 After he was charged, Holland sought to suppress the inculpatory statements he made during his interrogation, arguing among other things that police were required to re-administer the *Miranda* warnings prior to resuming questioning on the second and third days. The circuit court held a *Miranda-Goodchild* hearing[2] and determined that the warnings that Holland had been read on September 16 "carried through to the 17th and 18th."

¶5 Holland testified at trial and claimed he had acted in self-defense after Minkley threatened him with a hammer. The State played the recordings of Holland's interviews. The State also elicited testimony from both Holland's then-current girlfriend and ex-girlfriend, among other witnesses. On direct examination, the girlfriend, Lauren Langsford, testified that on the evening of September 14, Holland told her he had killed someone and that she would be hearing about it on the news. During cross-examination, Langsford was asked by defense counsel about her reaction to Holland's statement. She answered:

> A That's not the first time he told me he killed somebody?
>
> Q No. My question is, how did you react?
>
> A I thought it was the same reference to -- the other time that he told me he killed someone.
>
> Q Okay. So would it be fair to say that you didn't really react with alarm?
>
> A Not at first, no.

---

[2] *See* **State ex rel. Goodchild v. Burke**, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

3

Later, outside the jury's presence, defense counsel moved for a mistrial based on Langsford's surprise testimony or, in the alternative, to strike that testimony. The court denied the motion, reasoning that the testimony, although unexpected, was responsive to the questions asked.

¶6 Following evidence and arguments, the jury was given WIS JI—CRIMINAL 1014, which instructs the jury to consider whether the defendant is guilty of second-degree intentional homicide if it concludes he or she acted in self-defense and is therefore not guilty of first-degree intentional homicide. The jury convicted Holland on all counts, including first-degree homicide, and Holland was ordered to serve a life sentence without release eligibility. He now appeals.

## DISCUSSION

¶7 Holland raises three arguments on appeal. First, he contends the circuit court erroneously denied the suppression motion directed at the statements he made during the second and third days of custodial interrogation, prior to which he was not issued a "fresh" set of *Miranda* warnings. Second, he argues the court erroneously denied his motion for a mistrial based on Langsford's surprise testimony that he had previously told her he had murdered another individual. Finally, Holland challenges the adequacy of WIS JI—CRIMINAL 1014.

## I. Necessity of subsequent *Miranda* warnings

¶8 Statements obtained by law enforcement from a person who is subjected to custodial interrogation are inadmissible at trial unless the person had previously been advised of, and waived, his or her rights under *Miranda v.*

4

*Arizona*, 384 U.S. 436, 478-79 (1966).[3] When reviewing a motion to suppress, we uphold the circuit court's factual findings unless they are clearly erroneous, but we review the application of constitutional principles to those facts de novo. ***State v. Grady***, 2009 WI 47, ¶13, 317 Wis. 2d 344, 766 N.W.2d 729.

¶9 Holland argues that his statements made on the second and third days of interrogation were inadmissible at trial pursuant to ***Edwards v. Arizona***, 451 U.S. 477 (1981) and that fresh ***Miranda*** warnings were necessary prior to questioning him on those days. Holland's briefing focuses on footnote nine in the ***Edwards*** opinion, which discussed what constitutes an "interrogation" and anticipated a scenario in which the suspect elects to engage police in a dialogue *after* invoking his or her ***Miranda*** rights. *See **Edwards***, 451 U.S. at 486 n.9.

¶10 Here, it is undisputed both that Holland was subjected to police interrogation and that he was advised of, and validly waived, his ***Miranda*** rights on the first day of his questioning. The question is therefore not whether Holland's desire to speak to police on the second or subsequent days operated as a waiver of his previously invoked rights; the question is whether the ***Miranda*** warnings Holland had been given (and his waiver of those rights) became "stale" such that fresh warnings were necessary.

¶11 "The cases do not require that the warnings be repeated after an interruption in the questioning," even if the interruption exceeds ten hours or more.[4] ***United States v. Edwards***, 581 F.3d 604, 606 (7th Cir. 2009). Bright-line

---

[3] Holland's counsel conceded at the ***Miranda-Goodchild*** hearing that Holland's statements were voluntary.

[4] Approximately twelve and one-half hours elapsed between the interrogations on September 16 and 17.

rules are neither necessary nor desirable; "the proper approach for determining whether a suspect has effectively received his *Miranda* warnings is a totality of the circumstances test." *Grady*, 317 Wis. 2d 344, ¶15.

¶12     We agree with the circuit court's conclusion that additional *Miranda* warnings were unnecessary on the second and third days of questioning. During the three-day interrogation, Holland was kept at the Waukesha Police Department. He was interviewed in the same room, by the same officers, during the entire interrogation, and each time was transferred back to his jail cell when the questioning was completed. Holland's demeanor was the same during each of the interview sessions. The officers questioned him solely about the Minkley homicide, not other potential crimes, and the questioning that occurred on the second and third days was based upon the information Holland had provided during the first day.

¶13     The circuit court noted that on the first day, after asking about being allowed to return home, Holland told officers they would need to come back the next day for more information. The court found the officers could reasonably view that statement as an invitation to continue the questioning later. Moreover, Holland's decision to effectively "cut … off" the questioning on day one, coupled with his asking the officers whether he should get an attorney even before they had issued *Miranda* warnings,[5] indicated that Holland understood his rights, with no indication that understanding had diminished on subsequent days. In sum, although there were breaks in Holland's interrogation, the facts show no

---

[5] The officers advised Holland that only he could decide whether he should get an attorney.

"significant change in the character of the interrogation" that would have necessitated readministration of the **Miranda** warnings. *See* **Wyrick v. Fields**, 459 U.S. 42, 47 (1982).

## II. Mistrial motion

¶14 Whether to grant a mistrial lies in the sound discretion of the circuit court. **State v. Doss**, 2008 WI 93, ¶69, 312 Wis. 2d 570, 754 N.W.2d 150. We consider several factors when determining whether a circuit court has properly exercised its discretion, including whether the court has given the parties a full opportunity to explain their positions, whether it has considered alternatives to declaring a mistrial, whether the record reflects an adequate basis for the court's decision, and whether the court has considered the facts of record and the relevant law in reaching a determination. **State v. Moeck**, 2005 WI 57, ¶43, 280 Wis. 2d 277, 695 N.W.2d 783. The court must determine, in light of the whole proceeding, whether the alleged error was sufficiently prejudicial to warrant a new trial. **Doss**, 312 Wis. 2d 570, ¶69.

¶15 Holland claims the prejudicial nature of the witness's testimony is obvious and the circuit court's reasoning failed to assess the effect of the statement on the trial's fairness. However, Holland's stated reason for seeking a mistrial did not reference whatsoever any unfairly prejudicial effect arising from the witness's testimony. Rather, defense counsel argued merely that a mistrial should be declared because the answer was "not responsive to the question" and could not have been anticipated. In rejecting this argument, the court analyzed the testimony and concluded the witness's answers were, in fact, responsive to the questions posed. The court used a reasonable approach that was grounded in the facts and

arguments before it. It did not erroneously exercise its discretion when denying the motion.[6]

## III. Jury instructions

¶16 Holland's brief-in-chief asserts WIS JI—CRIMINAL 1014 failed to adequately inform the jury that a defendant's belief about the necessity of force in self-defense can be reasonable even if it is mistaken, as required by WIS. STAT. § 939.22(32) (2019-20).[7] Holland's reply brief withdraws this argument, correctly noting that the jury was instructed not to reach the issue of second-degree intentional homicide (and, therefore, the reasonableness of the defendant's beliefs) unless it concluded that Holland was not guilty of a first-degree offense. By convicting Holland of first-degree intentional homicide, the jury necessarily found that he did not actually believe the force he used was necessary to prevent imminent death or great bodily harm to himself. Therefore, the reasonableness of any such nonexistent belief is immaterial.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Even on appeal, Holland only vaguely suggests that the testimony presented an "other acts" problem, asserting that the court's failure to consider that body of law demonstrates an erroneous exercise of discretion. But because (1) he makes no effort to demonstrate that the challenged testimony would have been inadmissible "other acts" evidence had it been anticipated, (2) the testimony was elicited not by the state but by defense counsel during cross-examination, and (3) defense counsel never made an "other acts" argument, we cannot fault the circuit court for failing to conduct an "other acts" analysis when denying the mistrial motion.

[7] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.