COURT OF APPEALS
DECISION
DATED AND FILED

October 22, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If
published, the official version will appear in
the bound volume of the Official Reports.

A party may file with the Supreme Court a
petition to review an adverse decision by the
Court of Appeals. *See* WIS. STAT. § 808.10 and
RULE 809.62.

Appeal No. **2023AP618-CR**

Cir. Ct. No. **2017CF1419**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

---

**STATE OF WISCONSIN,**

  **PLAINTIFF-RESPONDENT,**

 **V.**

**ERIC J. SMILEY, JR.,**

  **DEFENDANT-APPELLANT.**

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County:  DAVID L. BOROWSKI and GLENN H. YAMAHIRO, Judges. *Affirmed*.

Before Geenen, Colón and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Eric J. Smiley, Jr. appeals from the judgment convicting him of one count of felony murder and one count of armed robbery as a party to a crime. Smiley also appeals from the order denying his motion for plea withdrawal.[1] We affirm.

## BACKGROUND

¶2 On March 22, 2017, Smiley, along with Qhualun D. Shaw and Deshaun K. Scott, used a sawed-off shotgun to carjack a woman's Kia at a gas station. Smiley was driving the stolen Kia when he stopped to allow Scott and Shaw to attempt another carjacking. During this attempt, Scott shot Greg Zyszkiewicz in the head, killing him. Scott and Shaw ran back to the Kia, and Smiley drove away. A few hours later, police saw Smiley driving the Kia, and when they tried to stop him, Smiley fled. Smiley eventually stopped the Kia and continued fleeing on foot, until he was caught and arrested. The State charged Smiley with, among other crimes, felony murder in relation to Zyszkiewicz's death during the attempted armed robbery.

¶3 Smiley moved to suppress incriminating statements he made during a lengthy custodial interrogation on the grounds that they were involuntary and coerced. According to Smiley, both detectives interrogating him repeatedly assured him that he would not be charged with a homicide. Based on those representations Smiley was induced to make incriminating statements related to his involvement in Zyszkiewicz's death.

---

[1] The Honorable David L. Borowski took Smiley's guilty plea and sentenced him. The Honorable Glenn H. Yamahiro presided over the ***Machner*** hearing and ruled on Smiley's motion for plea withdrawal.

¶4     The circuit court held a ***Miranda-Goodchild*** hearing.[2]  After hearing testimony from one of the interrogating detectives and watching a recording of the interrogation, the court granted Smiley's motion in part and made the following findings.  Smiley, who was twenty-one years old at the time, was interrogated for approximately six and one-half hours.  The interrogation began at around 4:03 a.m. the day after his arrest and ended at approximately 10:12 a.m.

¶5     The circuit court also made findings about Smiley's and the detectives' behavior during the interview.  Approximately fifty-six minutes into the interrogation, the detectives read Smiley his ***Miranda*** rights, and Smiley indicated that he understood his rights and agreed to talk to police.  The interrogation took place in a small police interrogation room, Smiley was not handcuffed or otherwise restrained, and he was advised that the interrogation was being recorded.  The detectives provided water, soda, and cigarettes to Smiley, they never threatened Smiley, and the three of them spoke calmly and politely with each other.  Smiley was awake, alert, attentive, and engaged throughout the interrogation, and he showed no signs of impairment, intoxication, mental health issues, or anything else that might interfere with his ability to understand what was happening around him or to understand what he was doing.  Smiley made statements and asked questions that matched the subject matter being discussed by the detectives.

¶6     The circuit court found that Smiley had prior experience with law enforcement and was familiar with some criminal law concepts such as initial confinement, extended supervision, concurrent and consecutive sentences, and being charged as party to the crime.  During the interrogation, Smiley "was

---

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966); ***State ex rel. Goodchild v. Burke***, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).  The Honorable Carolina Stark presided over the ***Miranda-Goodchild*** hearing and ruled on Smiley's motion to suppress.

concerned about not being charged for anything related to the death of Mr. Zyszkiewicz." The detectives knew about Smiley's concern "and that this was a barrier potentially to [Smiley] providing statements about the events surrounding [Zyszkiewicz's] death, including [Smiley's] involvement in those events."

¶7  After affirming the extent to which Smiley acted voluntarily, the circuit court also concluded that the detectives "crossed the line" at the 6:01:40 mark when they told Smiley that they were "giving [him] a pretty certain guarantee that [he was] not going to pick up a reckless homicide charge." The circuit court also observed that the detectives told Smiley that he would face a robbery-while-armed charge, fleeing, and "that's it." It found that the detectives knew that Smiley was not concerned about a charge having the word "homicide" in the title, but instead, was concerned about being charged with "anything related to the death of [Zyszkiewicz]."

¶8  Based on the totality of the circumstances, including Smiley's personal characteristics, the length and conditions of interrogation, and the strategies used by detectives to induce Smiley to continue talking, the circuit court concluded that the detectives' charging promise was misleading to Smiley and was used to "overcome [Smiley's] free will and deliberate choice." The circuit court granted Smiley's motion to suppress any statements made after the 6:01:40 mark, but it denied the motion with respect to Smiley's statements made before that point.

¶9  On the first day of trial, Smiley pleaded guilty to felony murder and armed robbery as a party to the crime. In exchange for the guilty pleas, the State agreed to dismiss outright the remaining charges, and though the State was free to argue at sentencing as to felony murder, it would make no sentencing recommendation as to armed robbery. During the plea colloquy, the circuit court

4

asked Smiley if anyone promised him anything to get him to plead guilty, and Smiley replied, "No." The circuit court noted that counsel spent "a very, very significant amount of time" with Smiley discussing the plea, and at Smiley's request, counsel also consulted with Smiley's father and other family members.

¶10 At the sentencing hearing, the State argued that although Smiley was not the shooter, Smiley was older than both Scott and Shaw, and it appeared that Smiley was leading the group. Smiley argued that he was not the "mastermind" or otherwise in control of Scott and Shaw.

¶11 After noting the need for proportionality and that Scott, the shooter, was sentenced to thirty years of initial confinement, the circuit court sentenced Smiley to twenty-four years of initial confinement followed by eight years of extended supervision for felony murder, and eight years of initial confinement followed by seven years of extended supervision for armed robbery, to be served consecutively. In imposing its sentence, the circuit court recognized that Smiley was "not the one who pulled the trigger," but emphasized the gravity of the offense, Smiley's criminal history, his age in comparison to Scott and Shaw, and his role as the driver and "ringleader" during a crime spree. Although the circuit court twice acknowledged that the other charges against Smiley were dismissed outright and not read-in, it commented during sentencing that Smiley made "many bad decisions" that day, including "running around with a sawed-off shotgun," and engaging in the armed robbery of the first victim.

¶12 Smiley filed a *Nelson/Bentley*[3] motion to withdraw his plea based on ineffective assistance of counsel. Among other arguments, Smiley asserted that his

---

[3] *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996); *Nelson v. State*, 54 Wis. 2d 489, 195 N.W.2d 629 (1972).

guilty plea was not knowingly, intelligently, and voluntarily entered because: (1) counsel promised that he would not be treated as the ringleader of Scott and Shaw, and (2) counsel allowed him to believe that the dismissed charges would not be considered during sentencing. The circuit court held a *Machner* hearing where trial counsel and Smiley both testified.

¶13 Trial counsel testified that Smiley never said that he would have difficulty pleading guilty if he was going to be treated or sentenced as the ringleader. When asked about the State's initial plea offer, in which Smiley would plead guilty to felony murder and armed robbery and the State would dismiss and read-in—rather than dismiss outright—the remaining charges, trial counsel advised Smiley to take the offer. Trial counsel testified that Smiley was reluctant to take the offer not because Smiley was under the impression that he would be viewed as the ringleader, but because "it was hard to make a decision in the bullpen on the day of trial." Trial counsel stated that there was never a discussion with the district attorney about Smiley having a problem with being viewed as the ringleader. Trial counsel also testified that although he would not present Smiley as the ringleader at sentencing and would dispute that assertion if made by the State, he would not have told Smiley that the court was not going to view Smiley as the ringleader.

¶14 When asked if he ever said anything to Smiley "to make him think that the [c]ourt wasn't going to consider his activities that whole day from the armed robbery to the fleeing," trial counsel responded, "No." Trial counsel said that even after the plea offer changed from read-in charges to the outright dismissal of charges, he explained to Smiley that the circuit court would still "consider all of the factors [and] the circumstances surrounding it."

6

¶15     Smiley testified that trial counsel only visited him once between December 2017—when he was transferred to Green Bay Correctional Institution— and April 2019, when he entered his plea. Smiley also testified that although the meeting was set to view the videotaped interrogation, Smiley only had about forty-five minutes to view it. Smiley said that, after he transferred to another correctional facility, trial counsel only called Smiley "[m]aybe two" times, and during those phone calls, "[t]he main focus was always about going to trial or like being the ringleader." Smiley testified that trial counsel indicated that he would get copies of the videos for Smiley, but he never did. Smiley stated that on the first day of trial, he told trial counsel to request an adjournment so Smiley could watch the videos, and trial counsel told him that he would do so but did not. Smiley also testified that trial counsel told him that he would obtain a private presentence investigation report but did not.

¶16     Smiley said that he did not accept the State's initial plea offer because "I told [trial counsel] that I would not be pleading guilty as long as I was having the read-in charges and that I was being considered as a ringleader." When asked about the revised plea offer that Smiley ultimately accepted, he testified that he thought that having the charges dismissed outright "meant that [the court] would not be able to use them as far as consideration during sentencing." According to Smiley, defense counsel never told him that the circuit court could still consider the dismissed charges.

¶17     Smiley said that trial counsel told him that (1) he, Smiley, "would not be looked at as the ringleader," and (2) that "he had spoke to either the [district attorney] or the [circuit court], one of them, and that they had some form of agreement." According to Smiley, trial counsel also told him that "because [Smiley] was the least culpable in the offense that took place that [he] will receive a

substantially lower sentencing than Scott or Shaw." Smiley stated that if he knew he was "going to be treated as the ringleader" and that the dismissed charges "were going to be considered in fashioning [his] sentence," he would not have pleaded guilty.

¶18 The circuit court denied Smiley's motion to withdraw his plea. It rejected as "completely incredible" Smiley's testimony that trial counsel told him that he would not be viewed as the ringleader and that trial counsel had an agreement with either the district attorney or the circuit court that Smiley would not be sentenced as the ringleader. It credited trial counsel's testimony that this representation was never made to Smiley and that he would argue the issue, and the court observed that making the request would be extremely irregular. The circuit court also found incredible Smiley's testimony that trial counsel told him that because he was the least culpable he would receive a substantially lower sentence than Scott or Shaw.

¶19 The circuit court also rejected Smiley's claim that trial counsel led him to believe that the dismissed charges would not be considered at sentencing. In rejecting the claim, it explained that the notion that the circuit court would disregard all of the facts it knew from the criminal complaint was unrealistic. The circuit court credited trial counsel's testimony that he did not say anything to Smiley that would have made him think that the court was not going to consider Smiley's activities over the course of the entire crime spree, "from the armed robbery to the fleeing[.]"

¶20 Smiley appeals.

**DISCUSSION**

I. **The circuit court correctly granted in part and denied in part Smiley's motion to suppress evidence.**

¶21     Smiley argues that although the circuit court correctly found that some of his inculpatory statements were the product of coercion, it should have found that coercion occurred much earlier in the interrogation. The State concedes the circuit court's finding that coercion occurred at the 6:01:40 mark of Smiley's interrogation, but it argues that there was no coercion until that point. The State further argues that even if there was coercion before this point, Smiley's inculpatory statements were still voluntary under the totality of the circumstances.

¶22     Involuntary confessions admitted into evidence violate a defendant's due process rights guaranteed by the federal and state constitutions. *State v. Hoppe*, 2003 WI 43, ¶36, 261 Wis. 2d 294, 661 N.W.2d 407. The burden is on the State to prove, by a preponderance of the evidence, that a confession was voluntary. *State v. Vice*, 2021 WI 63, ¶29, 397 Wis. 2d 682, 961 N.W.2d 1. Confessions "are voluntary if they are the product of a free and unconstrained will, reflecting deliberateness of choice, as opposed to the result of a conspicuously unequal confrontation in which the pressures brought to bear on the defendant by representatives of the State exceeded the defendant's ability to resist." *Hoppe*, 261 Wis. 2d 294, ¶36. Courts consider the totality of the circumstances in determining whether a confession is voluntary. *Vice*, 397 Wis. 2d 682, ¶30. "That analysis involves balancing the suspect's personal characteristics, such as age, intelligence, physical and emotional condition, and prior experience with law enforcement, against any pressures imposed upon him [or her] by police." *Id.*

9

¶23 However, before we perform this balancing test, "we must first examine the threshold matter of coercion," *id.*, ¶31, because "[c]oercive or improper police conduct is a necessary prerequisite for a finding of involuntariness[,]" *Hoppe*, 261 Wis. 2d 294, ¶37. "If our analysis of the facts does not reveal coercion or improper police pressures, there is no need for us to engage in the balancing test between the suspect's personal characteristics and those nonexistent pressures." *Vice*, 397 Wis. 2d 682, ¶31.

¶24 "[E]stablishing coercion is a high bar for the defendant to surmount" because the Due Process Clause protects only against police conduct that destroys a suspect's volition and compels the confession. *Id.*, ¶32. Even "outright deceit" may be "within the bounds of acceptable police practice" and does not per se amount to impermissible coercion. *Id.*, ¶33 (quoting *State v. Albrecht*, 184 Wis. 2d 287, 300, 516 N.W.2d 776 (Ct. App. 1994)). Moreover, even when a defendant establishes coercive police tactics, the resulting statements are "not automatically rendered involuntary" because it still must be shown "that, as a result of those pressures, the statement was no longer 'the product of free and unconstrained will, reflecting deliberateness of choice[.]'" *Vice*, 397 Wis. 2d 682, ¶35 (quoting *Hoppe*, 261 Wis. 2d 294, ¶36).

¶25 "Whether evidence should be suppressed is a question of constitutional fact." *State v. Johnson*, 2007 WI 32, ¶13, 299 Wis. 2d 675, 729 N.W.2d 182 (citation omitted). Ordinarily, we review "a circuit court's findings of historical fact under a clearly erroneous standard and apply constitutional principles to those historical facts independently." *State v. Rejholec*, 2021 WI App 45, ¶16, 398 Wis. 2d 729, 963 N.W.2d 121. However, "[w]here a custodial interrogation is video recorded, we are in the same position as the circuit court to determine what

10

occurred during the interrogation and therefore independently make that determination." *Id.*, ¶17.

¶26    Here, Smiley argues that coercion occurred around the 2:34:43 mark of the interrogation when the detectives told him that "Nothing in the charge would say homicide." Smiley characterizes this statement as a charging promise that induced him to continue making inculpatory statements. However, we agree with the circuit court that the full context surrounding this statement demonstrates that no coercion or charging promise occurred. The circuit court correctly observed that this statement, when viewed in context, was not framed as a charging promise. Instead, statements like this "would sound like a promise and then [be] quickly follow[ed] with something to the effect of the words 'probably happen' or 'probably not happen' or quickly follow[ed] with the words something like 'we can't guarantee it.'" We agree that this type of equivocation and conjecture about possible charges, while close to the line, does not cross it at this point in the interrogation and is "within reasonable bounds" of police conduct. *Albrecht*, 184 Wis. 2d at 300.

¶27    Smiley next argues that around the 2:56:24 mark of the interrogation, "Smiley was plied with a promise of avoiding a charge related to [Zyszkiewicz's] death, but only if he would talk about the incident." However, this mark does not show any promise that Smiley would not be charged in connection with Zyszkiewicz's death if he continued talking. Indeed, just seconds before this mark, the detectives told Smiley that they have no authority over charging decisions: "We don't decide on the charges. We're getting the story." Like the detectives' statements at the 2:34:41 mark, the detectives' open conjecture about what charges Smiley might face, seconds after having explained that they ultimately did not make charging decisions, is the kind of trickery and deception that is "within reasonable

11

bounds" of police conduct, and does not constitute impermissible coercion. *Albrecht*, 184 Wis. 2d at 300.

¶28    We agree with the circuit court that the detectives did not engage in coercion until the 6:01:40 mark when they told Smiley, "we're giving you a pretty certain guarantee that you're not going to ... pick up a reckless homicide charge." The detectives also told Smiley that he would face a robbery-while-armed charge, fleeing, and "that's it." We also agree with the circuit court that the detectives knew when they made these representations to Smiley that he was not concerned about a charge having "the word homicide in the title," but instead, was concerned about being charged with "anything related to the death of [Zyszkiewicz]."

¶29    Taking into consideration Smiley's age and personal characteristics, the psychological pressures and coercive tactics applied by the detectives, and the length and circumstances of the interrogation, we conclude, as did the circuit court, that the totality of the circumstances show that the detectives' charging "guarantee" was misleading to Smiley and was used to overcome Smiley's free will and deliberate choice to not make statements related to his involvement in Zyszkiewicz's death. *See Hoppe*, 261 Wis. 2d 294, ¶39. Smiley's statements became involuntary at the 6:01:40 mark of the interrogation, and the circuit court correctly excluded from evidence statements made after that point but not before it.

**II.    The circuit court correctly denied Smiley's motion to withdraw his plea.**

¶30    Smiley argues that his guilty plea violated due process, and he is entitled to withdraw it. Specifically, Smiley argues that his guilty plea was not entered knowingly, intelligently, and voluntarily because: (1) trial counsel promised that Smiley would not be sentenced as the ringleader, and (2) trial counsel

allowed Smiley to believe that his dismissed charges could not be considered by the circuit court at sentencing.

¶31    Defendants who seek to withdraw a guilty plea after sentencing "must prove, by clear and convincing evidence, that a refusal to allow withdrawal of the plea would result in 'manifest injustice.'" *State v. Brown*, 2006 WI 100, ¶18, 293 Wis. 2d 594, 716 N.W.2d 906 (citation omitted). One way to show a manifest injustice is to prove that the defendant did not knowingly, intelligently, and voluntarily enter the plea. *State v. Taylor*, 2013 WI 34, ¶49, 347 Wis. 2d 30, 829 N.W.2d 482; *Brown*, 293 Wis. 2d 594, ¶18. Factors extrinsic to the plea colloquy itself, like ineffective assistance of counsel, can render a plea infirm. *Taylor*, 347 Wis. 2d 30, ¶49; *State v. Hoppe*, 2009 WI 41, ¶3 n.4, 317 Wis. 2d 161, 765 N.W.2d 794. When a guilty plea is not knowingly, intelligently, and voluntarily entered, defendants may withdraw the plea as a matter of right because such pleas "violate[] fundamental due process." *Brown*, 293 Wis. 2d 594, ¶19 (citation omitted).

¶32    Whether a plea is knowing, intelligent, and voluntary is a question of constitutional fact. *Taylor*, 347 Wis. 2d 30, ¶25; *Hoppe*, 317 Wis. 2d 161, ¶61. We accept the circuit court's findings of historical and evidentiary facts unless they are clearly erroneous, but we independently determine whether those facts demonstrate that the defendant's plea was knowing, intelligent, and voluntary. *Hoppe*, 317 Wis. 2d 161, ¶61; *Brown*, 293 Wis. 2d 594, ¶19.

¶33    In this case, the circuit court rejected as "completely incredible" Smiley's testimony that trial counsel told him that he had an agreement with either the district attorney or the circuit court that Smiley would not be looked at as the ringleader. Smiley appears to argue that the circuit court never made this finding and instead only found that such a request from trial counsel would be "extremely

irregular" and that the State would never make such an agreement. Smiley misunderstands the circuit court's findings. The circuit court explicitly read portions of Smiley's testimony that it believed were incredible, and this included a recitation of Smiley's testimony that trial counsel told him that he would not be looked at as the ringleader.

¶34 Although Smiley disagrees with the circuit court's finding and posits that trial counsel lied to the circuit court and to Smiley to cover up his lack of preparation for trial, the record does not compel this conclusion. Indeed, the circuit court specifically acknowledged that trial counsel's recollection and documentation of the case file, at least prior to the first day of trial, "was lower than should have been expected for somebody who's properly documenting their file." However, the circuit court found that, in contrast, trial counsel's memory of the events on the day of trial "were much clearer," and it found credible trial counsel's testimony that although he told Smiley that he would argue against the notion that he was the ringleader, trial counsel ultimately had no control over how the circuit court viewed Smiley, and he would not have told Smiley definitively that the circuit court would not view him as the ringleader. On this record, the circuit court's finding that trial counsel never made a promise with respect to Smiley being sentenced as the ringleader was not clearly erroneous.

¶35 With respect to Smiley's argument that trial counsel allowed him to believe that the dismissed charges would not be considered at sentencing, the circuit court again found trial counsel credible and Smiley not credible. Trial counsel testified that he never told Smiley anything that would lead him to believe that the circuit court would ignore or not consider Smiley's criminal activities over the course of the events, from the armed robbery to the fleeing. When asked if he remembered conveying a "better" plea offer to Smiley after negotiating Smiley's

other charges to outright dismissals as opposed to being dismissed and read-in, trial counsel said, "Not a better offer but a different offer." The circuit court clearly credited trial counsel's characterization of the offer as "different" but not "better" because all of the facts related to those charges were included in the criminal complaint, the circuit court was familiar with those facts, and it was not realistic to believe that the circuit court would ignore them. The circuit court found that trial counsel understood that the facts underlying the dismissed charges could still be considered by the circuit court at sentencing, and it found that trial counsel did not say anything to Smiley that would lead him to believe that the circuit court would not consider these facts. This finding was not clearly erroneous.

¶36 The circuit court's findings of fact were not clearly erroneous. Based on these facts, the circuit court correctly determined that Smiley did not show a "manifest injustice" and was not entitled to withdraw his plea.

## CONCLUSION

¶37 We conclude that the circuit court correctly identified when Smiley's statements during his interrogation became involuntary and correctly excluded statements made after that point, but not before it. Further, the circuit court correctly denied Smiley's motion to withdraw his plea because Smiley failed to show that his plea was not knowingly, intelligently, and voluntarily entered.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15