COURT OF APPEALS
DECISION
DATED AND FILED

August 5, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1917-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF2279

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LARRY D. BENFORD,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: STEPHANIE ROTHSTEIN and MARK A. SANDERS, Judges. *Affirmed*.

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Larry D. Benford appeals from a judgment of conviction, entered upon a guilty plea, for felony murder, and from an order denying him postconviction relief without a hearing. Benford argues that not allowing him to withdraw his plea would result in manifest injustice. He contends that trial counsel provided ineffective assistance of counsel when counsel failed to move to suppress statements Benford made to police on May 12 and 13, 2018. Upon review, we affirm.

## BACKGROUND

¶2 Benford was charged with felony murder for causing the death of Alfonzie Cockroft while attempting to commit armed robbery, as a party to a crime, and with felony bail jumping. The criminal complaint alleged that Benford, his co-defendant DeShawn Moore, and two other men known only as "Huluan" and "Tank" planned to set up Cockroft to be robbed during a marijuana sale. On May 12, 2018, Benford and Moore entered Cockroft's vehicle, shots were fired, and Cockroft died as a result. The police found Cockroft dead in the vehicle. The police search yielded three different caliber handguns, casings, cash, suspected marijuana, and a scale. Benford and Moore had both been struck by gunfire and were treated at separate local hospitals.

¶3 The police interviewed Benford at Froedtert Hospital, while he was being treated for his gunshot wounds, on May 12, 13, 14, and 15, 2018. We recite only from the May 12 and 13 interviews relevant to this appeal. Benford was taken into custody while in the hospital because he had an open case with a plea scheduled for the following month on THC possession and dangerous weapon

charges. It is undisputed that Benford was not advised of his *Miranda*[1] rights at any point on May 12. On May 12, Benford told Detective Michael Saranec about getting shot while he and Moore met with a marijuana dealer.

¶4 On May 13, Detective Timothy Keller interviewed Benford, beginning with the *Miranda* warning and confirming Benford's understanding of his rights and the questioning. Benford informed the detective that he and Moore had a plan to rob a marijuana dealer, a plan they had developed with their friends, Huluan and Tank. They met with the marijuana dealer inside the dealer's vehicle and looked at the marijuana and guns, at which point the dealer pulled out a gun and started shooting and Benford grabbed for the gun. Reviewing booking photographs, Benford identified himself, Moore, and Cockroft; Benford identified Cockroft as the marijuana dealer. Benford also identified the guns found in Cockroft's vehicle in crime scene photographs. At 48:12 minutes into the interview, Benford said he was "done bullshitting" and that "the plan was for [him] and [Moore] to take the weed off the guy." However, Benford stated he, Moore, and Huluan did not expect the marijuana dealer to have a gun at the sale. At 51:20 minutes, Benford stated he had had the gun with the extended magazine shown in the crime scene photographs.

¶5 At 51:56 minutes into the interview with Detective Keller, Benford asked to speak to an attorney, and the detective immediately said it was fine and that they were done talking about the incident. Benford asked the police several questions, and the detective said he could not answer because Benford had requested an attorney. Benford then stated that he wanted to talk now and not

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

wait, at which point the police confirmed his intention and resumed discussing the incident. After that, Benford gave more details about the guns he and Moore brought with them, explaining that he and Moore pointed their guns at the marijuana dealer at the same time, demanding marijuana, at which point the dealer pulled his own gun. The dealer started shooting and Benford thought he and Moore each also shot at least once. Benford stated Moore and Huluan were the masterminds of the robbery, but that they planned to share the proceeds of the robbery with him and Tank.

¶6 In December 2018, Benford, by his original attorney, filed a motion in limine requesting Benford's statements to police not be admitted without a *Miranda/Goodchild* hearing,[2] and moved for additional time to pursue a motion on a *Miranda* violation arising out of Benford's May 12 statement. The State responded that it was not planning to introduce evidence from the May 12 interview at the upcoming trial, but that it would not object to a *Miranda/Goodchild* hearing. However, Benford's attorney then moved to withdraw, citing Benford's desire for new counsel, which the circuit court granted in January 2019.[3]

---

[2] Pretrial hearings on the admissibility of confessions are known in Wisconsin as *Miranda-Goodchild* hearings after *Miranda*, 384 U.S. 436 (1966), and *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965). In these hearings, the circuit court examines "(1) whether an accused in custody received *Miranda* warnings, understood them, and thereafter waived the right to remain silent and the right to the presence of an attorney; and (2) whether the admissions to police were the voluntary product of rational intellect and free, unconstrained will." *State v. Jiles*, 2003 WI 66, ¶25, 262 Wis. 2d 457, 663 N.W.2d 798.

[3] The Honorable Mark A. Sanders presided over the initial proceedings against Benford, and later presided over Benford's postconviction motion. We refer to Judge Sanders as the circuit court.

¶7    At a November 2019 pretrial hearing, the trial court addressed whether there had been any prior rulings on the admissibility of Benford's statements.[4]  Benford's new attorney stated he did not see a legal admissibility challenge, and focused on Benford's May 13 statement that he and Moore were "going to take the marijuana off of him," a statement made with *Miranda* warnings and before Benford had invoked the right to counsel.

¶8    At the next court date, Benford refused to come to court and did not want to start the trial.  Nevertheless, the trial court addressed the State's notice of recorded statements for publication at trial.  The notice listed an intent to put copies of recordings from four statements made by Benford at the hospital on May 12, 13, 14, and 16, as well as a plan to publish four specific portions from the May 13 and 16 statements.  Trial counsel stated, "I don't think there's an objection that I can raise."  The State also informed the court that there was no recording of the May 12 interview; however, the State planned to elicit testimony from the detective who interviewed Benford on May 12 about a misleading statement.

¶9    Trial counsel moved to withdraw in May 2020, which the court granted in July, and successor counsel was appointed.  In October 2020, Benford decided to resolve the case with a plea.  If Benford pled guilty to the felony murder charge, the State would "recommend 20 to 22 years initial confinement leaving extended supervision up to the [c]ourt," and dismiss but read in the bail jumping charge.  After a thorough plea colloquy, the trial court accepted Benford's

---

[4] The Honorable Stephanie Rothstein presided over Benford's final pretrial, plea, and sentencing hearings.  We refer to Judge Rothstein as the trial court.

guilty plea. The trial court imposed a sentence of 29 years of imprisonment divided as 22 years of initial confinement and 7 years of extended supervision.

¶10 Benford filed the postconviction motion underlying this appeal in January 2023. Benford argued that trial counsel was ineffective for not moving to challenge the admissibility of the May 12 statement or the May 13 statement after Benford had invoked his right to counsel. He asserted that, while his original attorney filed a motion in limine asking the court for a hearing on the admissibility of his police statements, his trial counsel advised the court that he was not challenging the admissibility of the statements.

¶11 The circuit court denied Benford's motion for postconviction relief without a hearing in September 2023. The court incorporated Benford's recitation of the facts because they were undisputed by the State. The court concluded that Benford had failed to allege sufficient material facts to make a showing of prejudice as a result of trial counsel's failure to challenge the admissibility of, and to move for the suppression of, the May 12 and 13 statements. Benford now appeals.

## DISCUSSION

¶12 Benford argues that he alleged sufficient material facts to be entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. To succeed on his ultimate goal of plea withdrawal, Benford would need to "show by clear and convincing evidence that a refusal to allow withdrawal of the plea would result in manifest injustice[.]" *State v. Dillard*, 2014 WI 123, ¶36, 358 Wis. 2d 543, 859 N.W.2d 44. "A defendant can establish manifest injustice by proving that he or she received ineffective assistance of counsel." *State v. Jeninga*, 2019 WI App 14, ¶11, 386 Wis. 2d 336, 925 N.W.2d 574.

6

¶13 To establish ineffective assistance of counsel, the defendant must satisfy the two-prong test in *Strickland v. Washington*, 466 U.S. 668, 687 (1984): deficient performance and prejudice to the defense. To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice in a plea withdrawal context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The reviewing court need not address both inquiries if a defendant fails to make a showing on one of them. *Strickland*, 466 U.S. at 697.

¶14 An evidentiary hearing "preserv[ing] the testimony of trial counsel" is a prerequisite to an ineffective assistance of counsel claim in Wisconsin. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). To be entitled to a *Machner* hearing, the defendant's postconviction motion must allege "sufficient and non-conclusory facts which would entitle the defendant to relief and the record" must not "conclusively establish otherwise[.]" *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶15 Whether a postconviction motion is sufficient on its face to entitle a defendant to a *Machner* hearing on an ineffective assistance of counsel claim is a question of law that this court reviews independently. *State v. Balliette*, 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334. However, we review the circuit court's decision to deny a postconviction motion without a *Machner* hearing for

an erroneous exercise of discretion. *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.

¶16 Benford argues that trial counsel should have moved to suppress his interview on May 12, where he was not advised of his *Miranda* rights, and his interview on May 13, after he had invoked his right to counsel, approximately 51 minutes into the interview, but the police asked additional questions before he had access to counsel.[5]

¶17 For purposes of this review, even if we assume that trial counsel was deficient for failing to challenge the admissibility of, or to move to suppress, these statements for the reasons Benford asserts, we conclude that Benford has failed to allege sufficient materials facts to make a showing of prejudice from this deficient performance. In a plea withdrawal analysis, "the defendant must provide a 'specific explanation of why the defendant alleges he [or she] would have gone to trial[.]'" *Jeninga*, 386 Wis. 2d 336, ¶14 (citation omitted). Benford's allegations are conclusory, asserting that if trial counsel had moved to suppress these statements, he would have not pled guilty, but would have gone to trial.[6] This is

---

[5] It is undisputed that Benford was properly advised of his *Miranda* rights before he invoked his right to counsel in the May 13 statement. Therefore, he does not make an argument that trial counsel should have moved to suppress the entire statement.

[6] On appeal, Benford further develops his argument on prejudice, conceding he admitted his intention to rob the marijuana dealer in the first 51 minutes of the interview, but insisting he did not admit to shooting a gun toward Cockroft until after invoking his right to counsel, which Detective Keller described as occurring after 59:35 minutes into the interview. A postconviction motion must allege "within the four corners of the [postconviction motion] itself," sufficient material facts about the claim to allow a reviewing court to "meaningfully assess" the claim. *State v. Allen*, 2004 WI 106, ¶23, 274 Wis. 2d 568, 682 N.W.2d 433. Benford did not make this allegation in his postconviction motion to the circuit court. Even if we were to consider this argument, it does not reach why he would have chosen a trial instead of his plea. Furthermore, the State was not trying to prove that Benford intentionally shot Cockroft. Felony murder does not require the State to prove that a defendant "fired the fatal shot." *State v. Rivera*, 184 Wis. 2d 485, 490, 516 N.W.2d 391 (1994).

insufficient. *See Allen*, 274 Wis. 2d 568, ¶15 (stating that "a postconviction motion for relief requires more than conclusory allegations"). Benford offers no objective, specific factual allegations to explain why he would have gone to trial if these statements had been suppressed. *See State v. Bentley*, 201 Wis. 2d 303, 316, 548 N.W.2d 50 (1996) (stating that "[w]ithout facts to support his allegation that he pled guilty only because of the misinformation, [the defendant's] allegation amounts to merely a self-serving conclusion").

¶18    The jury instructions for felony murder provide that the State must prove that (1) "[t]he defendant attempted to commit the crime of armed robbery as party to a crime";[7] and (2) "[t]he death of [Cockroft] was caused by the attempt to commit armed robbery as party to a crime."[8]  The State argues, and we agree, that the first 51 minutes of the May 13 interview provides sufficient evidence for the State to prove the elements of the underlying crime of attempted armed robbery as a party to a crime.

¶19    Benford's conclusory allegations fail to grapple with the evidence that the State would still have been able to present from the first 51 minutes of the May 13 statement.  The record reflects that the State filed notice to publish a

---

[7] The jury instructions also provided the elements for the underlying crime of attempted armed robbery as a party to a crime.  The State had to prove beyond a reasonable doubt that Cockroft was the owner of the property that Benford took and carried away with an intent to steal while Benford acted forcibly and threatened or used a dangerous weapon.  The party to a crime modifier meant Benford had to act directly; aid and abet the commission of the armed robbery; or be part of a conspiracy with another to commit it.  The attempt modifier meant that Benford's acts demonstrated unequivocally that he "intended to and would have committed" the crime "except for the intervention of another person or some other extraneous factor."

[8] There appears to be no dispute over the second element of felony murder.  In any case, the complaint provides that the medical examiner's testimony would prove Cockroft's cause of death from gunshot wounds related to this incident.

selection from 48:10 to 51:26, when Benford told Detective Keller he was "done bullshitting" and he would tell the police what actually happened. He admitted to being at the scene, to entering Cockroft's vehicle with Moore, to planning with Moore "to take the weed off the guy," and to having the gun with the extended magazine recovered from the scene. Benford also expressed that he, Moore, and Huluan did not expect Cockroft to have a gun, and that he was sorry he got involved. Within the admissible statement, Benford was also advised of his *Miranda* rights, and his understanding of those rights was clarified. Benford also identified his cell phone and guns from the crime scene, as well as Moore and Cockroft from police booking photographs. Benford also described planning the robbery with Moore, Huluan, and Tank.

¶20 Benford has not shown that suppressing the two challenged statements would have affected the proceedings. This is the essence of the prejudice test for ineffective assistance of counsel. He has not alleged why he would have proceeded to trial if they had been suppressed, when his unchallenged, admissible May 13 statement placed Benford, armed with a dangerous weapon, inside Cockroft's vehicle with a plan to rob the marijuana dealer.

¶21 We conclude that Benford has not alleged sufficient material facts to make an adequate showing of prejudice in an ineffective assistance of counsel claim. Benford's allegations are conclusory and do not wrestle with why suppressing those two statements would have had him forego his plea and head to trial. *See Hill*, 474 U.S. at 59. He "fails to identify any facts to support" why suppressing those two statements matters, when the first 51 minutes of his May 13 statement introduce the evidence the State would need to prove. *See Bentley*, 201 Wis. 2d at 316. Because Benford has failed to make the required showing of prejudice, we decline to analyze whether trial counsel's performance was

deficient. *See Strickland*, 466 U.S. at 697. Accordingly, he has failed to show he received ineffective assistance of counsel.

¶22 We conclude that Benford's allegations were insufficient to entitle him to a *Machner* hearing. He has not demonstrated that his claim of ineffective assistance of counsel supports that it would be a manifest injustice to not allow him to withdraw his pleas. *See Jeninga*, 386 Wis. 2d 336, ¶11.

¶23 As Benford's allegations were insufficient to be entitled to an evidentiary hearing, it was within the circuit court's discretion to deny the postconviction motion without a hearing. *Allen*, 274 Wis. 2d 568, ¶9. The court's "written decision demonstrates that it examined the relevant facts from the record, applied the proper legal standard, and engaged in a rational decision-making process to reach its conclusion." *Bentley*, 201 Wis. 2d at 319. We conclude the court properly exercised its discretion and we do not discern error.

## CONCLUSION

¶24 We conclude that Benford has not alleged sufficient materials facts to be entitled to an evidentiary hearing on his postconviction motion; therefore, the circuit court acted within its discretion when it denied his motion without a hearing. He has not shown it would be a manifest injustice if he were not allowed to withdraw his plea on the basis of ineffective assistance of counsel.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5 (2023-24).

11